111 So.2d 282 (1959)
Marvin GRIFFITH, Appellant,
v.
STATE of Florida, Appellee.
No. A-169.
District Court of Appeal of Florida. First District.
April 21, 1959.
Rehearing Denied May 14, 1959.
*283 Turnbull & Hill, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
CARROLL, DONALD, Judge.
The appellant has appealed from a judgment and sentence of the Circuit Court for Leon County, Florida.
The information upon which he was tried charged him with setting up and promoting a lottery, possessing lottery paraphernalia, and being interested in a lottery, all in violation of the laws of Florida. A few days after the information was filed the appellant moved to quash the search warrant and its supporting affidavit and to suppress the evidence secured under the warrant. This motion was denied by the Circuit Court.
The following month the appellant and six others were tried before a jury and he was found guilty as charged. The appellant's motion for a new trial was denied, a judgment of guilty was entered against him, and he was sentenced to be confined at hard labor in the State Prison for two years.
The main question on this appeal revolves around the evidence and testimony of one Ed McCollum, a special investigator for the Attorney General of Florida. Several months before the trial McCollum began placing the appellant "under surveillance". The appellant carried on his activities from an apartment, and McCollum rented a neighboring apartment, from which he watched the appellant on Saturdays. The telephone in McCollum's apartment was on the same party line as the appellant's telephone, so that McCollum was enabled to listen in on the telephone conversations between the appellant and other persons. In order to avoid continually rushing to his telephone and picking up the receiver to listen to the appellant's conversations, McCollum took a wire, hooked it around his telephone, and connected one end of his wire to the telephone wire at the point where it came out of the wall. The other end of his wire he connected to a telephone receiver attached to a headset, a strap that he placed over his head. With a long wire McCollum was thus enabled to walk at liberty around his room, wearing the headset, and constantly listen in on conversations carried on by the appellant with other persons over the telephone. The advantages of this device were several: McCollum was relieved of the necessity of continually picking up the regular telephone receiver, for he had no way of telling when the appellant's telephone was in use; with this device there were no telltale clicks that would have occurred when he picked up the regular receiver, nor were there other noises that would carry to the appellant and the persons talking with him. There was no transmitting part on this device, only receiving. There was no way by which *284 the appellant or the persons talking with him could tell that McCollum was listening in. For a period of nine Saturdays McCollum and two other officers listened in on this device and otherwise "kept the appellant under surveillance."
The appellant contends that this was a "wire tap" and was therefore illegal; that therefore the evidence secured through the use of this telephone device was inadmissible at the trial and could not have properly been used as a basis for probable cause to justify the issuance of the search warrant.
This is the vital question in this case, for the evidence based upon what was heard over the telephone by McCollum and the other officers constituted a substantial part of the evidence sustaining the appellant's conviction, so that, if we should hold that this evidence was inadmissible, the judgment of conviction would have to be reversed.
Few questions of law have evoked in the jurisprudence of this country as much heat and emotion as the legality and the admissibility of evidence obtained through a wire tap. Those favoring admission point out that, if society is to be protected against criminals, it is necessary that law enforcement officers be allowed to use a mechanical device that permits them to obtain evidence essential to a conviction of criminals, particularly in this modern day when so much crime is perpetrated through the use of modern communication media like the telephone. Those opposing such admission invoke the so-called right of privacy, pointing out that, if an American citizen is to be secure in his rights, he should not be subjected to the hazards of other persons without authority listening to his private conversations, or else our democratic government might some day develop into a totalitarian police state. A good illustration of this conflict of viewpoint may be found in the majority and dissenting opinions in the case of Commonwealth v. Chaitt, 380 Pa. 532, 112 A.2d 379.
If we are to rule that the evidence thus obtained by McCollum in the instant case was inadmissible, we must do so because we also find that its use was illegal either on the ground that it is in violation of a principle of law or in violation of a federal or state statutory or constitutional provision.
The general rule and the common law rule seem to be that, in the absence of a statute or constitutional provision forbidding the use of a wire tap, evidence obtained through the use of such is admissible in court. The leading case on this subject is Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, decided in 1928. In that case the Supreme Court of the United States decided that wiretapping by federal officers did not involve an unreasonable search and seizure under the Fourth Amendment to the United States Constitution and that evidence obtained therefrom was admissible in the federal courts. Wire tap evidence, it was held, fell within the established common law doctrine that evidence illegally obtained, if relevant and trustworthy, is nevertheless admissible.
Six years after the decision in the Olmstead case Congress enacted Section 605 of the Federal Communications Act (47 U.S.C.A. § 605). This is what is commonly known as the "Wire Tapping Statute". This section, in pertinent part, provides: "* * * and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. * * *"
This statute has been construed in many cases in the United States courts. Two of the most noteworthy cases construing the statute were the Nardone cases (Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 277, 82 L.Ed. 314; 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307). In these decisions the Supreme Court held that the evidence obtained through wiretapping by federal agents would not be admissible in federal *285 courts. That court was not bothered by the lack of any Congressional intent to formulate an evidentiary rule. Justice Roberts in the majority opinion expressed his belief that the words "no person" in Section 605 included federal agents and that the prohibition against divulgence to "any person" barred divulgence in the federal courts of an intercepted conversation. To the argument that Congress did not intend to hamper crime detection the Supreme Court replied: "The answer is that the question is one of policy. Congress may have thought it less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty". This conflict of policy was italicized in Justice Sutherland's dissenting opinion, in which he expressed his abhorrence of the protection thus afforded the most depraved criminals who used the telephone in the furtherance of their illegal plans.
The next inquiry was naturally whether evidence obtained through wiretapping by state agents would be admissible in state courts. This question was directly passed upon by the United States Supreme Court in the case of Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 234, 97 L.Ed. 231, where the court said:
"Without deciding, but assuming for the purpose of this case, that the telephone communications were intercepted without being authorized by the sender within the meaning of the Act, the question we have is whether these communications are barred by the federal statute, § 605, from use as evidence in a criminal proceeding in a state court.
"We think not. Although the statute contains no reference to the admissibility of evidence obtained by wiretapping, it has been construed to render inadmissible in a court of the United States communications intercepted and sought to be divulged in violation thereof, Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and this is true even though the communications were intrastate telephone calls. Weiss v. United States, 308 U.S. 321, 329, 60 S.Ct. 269, 272, 84 L.Ed. 298, [302]. Although the intercepted calls would be inadmissible in a federal court, it does not follow that such evidence is inadmissible in a state court. Indeed, evidence obtained by a state officer by means which would constitute an unlawful search and seizure under the Fourth Amendment to the Federal Constitution is nonetheless admissible in a state court, Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, while such evidence, if obtained by a federal officer, would be clearly inadmissible in a federal court. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, [L.R.A. 1915B, 834, Ann. Cas. 1915C, 1177]. The problem under § 605 is somewhat different because the introduction would itself be a violation of the statute, but in the absence of an expression by Congress, this is simply an additional factor for a state to consider in formulating a rule of evidence for use in its own courts. Enforcement of the statutory prohibition in § 605 can be achieved under the penal provisions of § 501.
"This question has been many times before the state courts, and they have uniformly held that § 605 does not apply to exclude such communications from evidence in state courts. Leon v. State, 180 Md. 279, 23 A.2d 706; People v. Stemmer, 298 N.Y. 728, 83 N.E.2d 141; Harlem Check Cashing Corp. v. Bell, 296 N.Y. 15, 68 N.E.2d 854; People v. Channell, 107 Cal. App.2d 192, 236 P.2d 654. While these cases are not controlling here, they are entitled to consideration because of the high standing of the courts from which they come."
*286 We recognize and agree with this line of authority headed by the decision in Schwartz v. State of Texas. Our conclusion is, therefore, that in the instant case McCollum's testimony was not inadmissible at the trial because in violation of Section 605 of the Federal Communications Act.
Is evidence secured through wiretapping inadmissible as in violation of some statutory provision of the State of Florida?
The only Florida statute invoked by the appellant in this connection is Section 822.10, Florida Statutes, F.S.A., which reads as follows:
"Injuring or tapping telegraph or telephone lines, etc.  Whoever, without the consent of the owner thereof, destroys, damages, or in any way injures any telegraph or telephone poles, cables, wires, fixtures, or other apparatus, equipment, or appliances; or obstructs, impedes, or impairs the service of any telegraph or telephone line or lines, or the transmission of messages thereover; or attaches any unauthorized device or equipment to any telegraph or telephone line or instrument; or taps or connects, directly or indirectly, by wire or any other means whatsoever, to or with any telegraph or telephone line so as to hear, or be in position to hear, or to enable any other person to hear or be in position to hear, for any use or purpose whatsoever, any message going over said line, or for the purpose of receiving, or enabling any other person to receive any unauthorized service over said line, or uses, or attempts to use, * * * in any way, any information so obtained; or aids, agrees with, employs, or conspires with, any person to do or cause to be done any of the acts hereinbefore mentioned; shall be punished by fine not exceeding five hundred dollars or by imprisonment not exceeding six months."
This statute was construed by the Florida Supreme Court in the case of Perez v. State, Fla., 81 So.2d 201, 204. In that case the defendant was convicted of violating the state lottery laws. On his appeal the defendant attacked the judgment against him because of the introduction at the trial of evidence procured in a search of his premises. In the affidavit forming the basis for the search warrant it was said, among other things, that the affiant personally observed a confidential informant dial a telephone number, being the number listed in the local telephone directory under the name of the defendant, and, while listening on an extension of said telephone, the affiant heard the confidential informant talking to a certain woman, from whom the informant purchased over the telephone an interest in a lottery commonly known as Bolita or Cuba. In that case the Supreme Court, speaking through Mr. Justice Thomas, said with reference to the appellant's contention:
"As for the argument that the information was not usable because of the statute, Sec. 822.10, supra, we cannot agree that it leads to a decision in appellant's favor. That law provides punishment for the tapping of communication systems `without the consent of the owner', but we cannot construe it to mean that what was done by the affiant and the informant in this case constituted a violation that would render the information illegal, or useless, as a basis for establishing probable cause.
"Nor do we agree that by the enactment of Sec. 364.31, Florida Statutes 1951, and F.S.A., the legislature adopted by reference Sec. 605 of the Federal Communications Act of 1934 so that a construction of the federal act would condemn the action of the affiant as a violation of state law. Cf. Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231. The state statute on this point simply provides that public utility companies shall not be expected to violate the federal *287 act in meeting the responsibilities placed on them by state law."
In the very recent case of Williams v. State, Fla.App., 109 So.2d 379, the District Court of Appeal for the Second District of Florida held that the evidence of telephone conversations between the appellant and various persons overheard and recorded by a deputy sheriff listening on a party line was not obtained in violation of Section 605 of the Federal Communications Act or Section 822.10, Florida Statutes, F.S.A. and was admissible in evidence against the appellant in his trial on charges of assisting, promoting, and conducting a lottery.
Our conclusion, therefore, under the authorities discussed above, is that evidence obtained through wiretapping is not inadmissible in evidence in the state courts of Florida because obtained in violation of any general principle of law, any federal or state statutory provision, or the United States Constitution.
Nevertheless, despite this conclusion, we are so deeply concerned with the potential dangers of wiretapping to our American way of life, to our sacred liberties and our democratic society, and to our concept of fair play, that we have reached the further conclusion that wiretapping violates Sections 12 and 22 of the Declaration of Rights of the Florida Constitution, F.S.A. Section 12 of the Declaration of Rights provides, in part:
"No person shall be * * * compelled in any criminal case to be a witness against himself * * *."
Section 22 of the Declaration of Rights provides:
"The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."
Our reasoning behind this conclusion follows along the line of the reasoning of the dissenting opinion in the case of Olmstead v. United States, 277 U.S. 438, 48 S. St. 564, 72 L.Ed. 944. Paraphrasing this reasoning, we think that tapping telephone wires and listening in by law enforcement officers constitutes a search for evidence and hence comes within the purview of the Declaration of Rights, establishing the rights of the people of this state to be secure in their persons, houses, papers, and effects, against unreasonable searches for evidence by law enforcement officers through the device of tapping telephone wires. We further hold that the use as evidence of conversations overheard through wiretapping in effect compels a defendant in a criminal case to be a witness against himself, in violation of Section 12 of the Declaration of Rights.
Our conclusion that wiretapping is contrary to the Florida Constitution and that evidence obtained by law enforcement officers through wiretapping is inadmissible in criminal trials in the state courts of Florida is, however, not necessary to the determination of the present appeal, for we are of the opinion that McCollum in this case did not perpetrate a wire tap. He did not "intercept" the telephone conversations in the usual meaning of that word and he did what he had a right to do because he was on a party line. In other words, McCollum could have gained the same information merely by picking up the receiver and listening in. The main difference is that with the telephone device attached by McCollum he was saved the inconvenience of having constantly to pick up the receiver and listen in and he enjoyed the convenience of being able to walk around the room and listen at any time without causing the telltale click and other noises usually accompanying the lifting of a receiver on a party line.
*288 Counsel on this appeal have directed us to no case, and our independent research has revealed none, in which a witness secured his information by listening in on a device attached to a party line, so in this regard the present case seems to be a case of first impression.
A somewhat analogous situation appears to exist where a witness listens to a telephone conversation over an extension telephone. This situation was involved in the case of Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 162, 2 L.Ed.2d 134. In that case the defendant before the United States District Court was prosecuted for transmitting an interstate communication which threatened the life of a certain person in order to obtain from him a stock certificate which he held as collateral for a loan. While the defendant was in New York, he had spoken by telephone with one Sparks, who was in Pueblo, Colorado. Anticipating another call from the defendant, Sparks requested that members of the Pueblo police department overhear the conversation, so, when the defendant again telephoned Sparks, two police officers at Sparks' direction listened to the conversation on a telephone extension in another room in Sparks' home. This extension had not been installed there just for this purpose, but was a regular connection, previously placed and normally used. At the trial the police officers testified over objection that during the conversation the defendant had threatened Sparks' life because he would not surrender the certificate. The United States Supreme Court held that this evidence was admissible in federal court, saying:
"The telephone extension is a widely used instrument of home and office, yet with nothing to evidence congressional intent, petitioner argues that Congress meant to place a severe restriction on its ordinary use by subscribers, denying them the right to allow a family member, an employee, a trusted friend, or even the police to listen to a conversation to which a subscriber is a party. Section 605 points to the opposite conclusion * * *. Common experience tells us that a call to a particular telephone number may cause the bell to ring in more than one ordinarily used instrument. Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of Section 605, interception, has not occurred."
The Supreme Court then affirmed the judgment of conviction, with Justices Frankfurter and Douglas dissenting.
It would be easy to analogize this situation in the case at bar and say that a party line is widely used in homes and offices, and hence a person who uses his telephone, presumably knowing that it was a party telephone, would naturally consider the possibility that someone could be listening to his conversation over the party line. A person using a telephone that he knows is on a party line takes the risk that another person may overhear the conversation, and a person who telephones another, even though he himself may have a private line, is presumed to know that party lines are in wide use and that the person he is calling may be on a party line and that someone else on the party line may overhear the conversation. The analogy, however, ceases in the aspect of the consent of one of the parties to the telephone conversation, as was present in the Rathbun case, but not in the instant case.
Our decision on this appeal is not to be construed in any way as an approval of the practice of wiretapping or unauthorized listening to telephone conversations through other devices by law enforcement officers or anyone else. On the contrary, we condemn the practice. It is a dangerous practice, and, if used increasingly or extensively, could well help to lay the groundwork *289 for the development of a police state, which is abhorrent to all Americans, and help to destroy personal liberties. We agree with Justice Musmanno in his vigorous dissenting opinion in the case of Commonwealth v. Chaitt, 380 Pa. 532, 112 A.2d 379, in which he points out that the right of privacy which has been achieved through centuries of struggle must not, in the hands of wilful meddlers, be allowed to be lost in the few seconds it takes to tap a telephone wire.
In other assignments of error on this appeal the appellant questions the sufficiency of the facts stated in the affidavit or search warrant to constitute probable cause for the issuance of the search warrant. We have examined this affidavit and are of the opinion that it sets forth sufficient facts to show probable cause. Some of the information stated in the affidavit was no doubt procured through the use of the telephone device attached to the party telephone in McCollum's apartment, as discussed earlier in this opinion, but the question whether this militates against the use of such information in an affidavit for a search warrant is effectively disposed of in the Florida Supreme Court's rehearing opinion in the recent case of Chacon v. State, Fla., 102 So.2d 578, 590:
"In order that the matter may be conclusively settled once and for all, we herewith announce again that the information forming the basis for a search warrant is not to be measured by its admissibility as evidence in the trial of the case. In other words, an officer may obtain information which would be adequate to support probable cause for the issuance of a search warrant even though if such information were subjected to the technical rules of evidence applicable to the trial of the cause, it would not be considered admissible."
In the instant case, of course, we have held that the information obtained by McCollum through the use of the telephone device was admissible as evidence at trial, but, under the Chacon doctrine, even if the evidence were inadmissible at the trial, it still could be properly used as a basis for the affidavit for the search warrant.
We, therefore, hold that the judgment and sentence in this appeal should be, and they are, affirmed.
Affirmed.
WIGGINTON, Acting Chief Judge, concurs.
MELVIN, WOODROW M., Associate Judge, dissents.
WOODROW M. MELVIN, Associate Judge (dissenting).
It is my opinion that the judgment and sentence appealed from should be reversed.
That which everybody knows, the Court is presumed to know. When people are engaged in a conversation on a telephone party line, any other person having access to the same party line may listen in. However, when the third receiver is lifted, a "click" will be heard on the line and the parties thereby have notice that the privacy of their conversation is about to be invaded.
I do not think it is important whether the device is designated as wire attachment or a wire tap. The mechanical device described in the majority opinion was so designed and installed as to permit its user to hear the conversation of the appellant and another, with no chance to hear a "click" or any other sound to indicate the intrusion.
Section 22 of the Declaration of Rights of the Florida Constitution was designed for the protection of the citizen in his recognized right of privacy. If information is gained in violation of such right, the provisions of this Section seal the lips and demand *290 perpetual silence of the person who would use such information.
By the use of this mechanical device, the State witness constructively projected himself into the privacy of the defendant's room just as effectively as if he had slipped into the room through a window and conveniently concealed himself to listen to the defendant.
I therefore respectfully dissent.