172 So.2d 857 (1965)
Charles Edward BARBER, Appellant,
v.
STATE of Florida, Appellee.
No. E-463.
District Court of Appeal of Florida. First District.
March 23, 1965.
Rehearing Denied April 9, 1965.
*858 Carl Gustave Swanson, Cocoa Beach, for appellant.
Earl Faircloth, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for appellee.
STURGIS, Chief Judge.
The appellant, Charles Edward Barber, defendant below, was tried by jury and adjudged guilty of an attempt to commit grand larceny, hence this appeal. The judgment is affirmed.
The information charged, in substance, that Barber, by false and fraudulent representations and pretense, attempted to take, steal and carry away $2,500.00 in cash, with the intent to deprive the true owner, Mrs. Leroy Hartley, of her property.
The only question of law to be resolved here is whether the trial court erred in admitting in evidence, over Barber's objection, a tape recording, made without his knowledge, of a telephone conversation between him and Mrs. Hartley, the prosecuting witness, which recording was procured before his arrest and with Mrs. Hartley's consent by means of wires that were attached by a deputy sheriff to the telephone receiver used by her in communicating with Barber.
Prior to such recording appellant Barber falsely represented to Mrs. Hartley, whose son was serving a two-year sentence of penal imprisonment, that for $2,500.00 in cash he could and would get the sentencing judge to substantially reduce said term of imprisonment. Mrs. Hartley, without Barber's knowledge, revealed his proposal to the local State Attorney who with her consent arranged for the recording to be made. The deputy sheriff, using a suction cup device, attached electronic equipment to the telephone receiver used by Mrs. Hartley at her end of the line, with wires leading to the instrument which unknown to Barber recorded her conversation with him. The tape recording, admitted in evidence over his objection, was highly incriminating in character.
The trial judge heard extensive argument of counsel on the question of the admissibility of the challenged evidence. He expressed a lack of intimate knowledge of the subject as compared to counsel, but in admitting the evidence succinctly observed:
"* * * if you have properly represented to me what the law is, * * * it would be my position in this case that if she had wanted to she could have turned the telephone over to Mr. Patrick, which is exactly what she did, and he could go ahead and record it with her permission."
Much of said argument was devoted to federal aspects of evidence obtained by wire tapping in cases where consent of a conversant was not involved as in this case. Other than academically, we are not concerned with the federal constitution or laws enacted pursuant thereto. We are confronted instead, as was the court below, solely with the Constitution of Florida and laws enacted pursuant thereto. From that approach, we hold on the authority of *859 Griffith v. State, 111 So.2d 282 (Fla.App. 1959), and cases cited therein, that the trial judge did not err in admitting the tape recording in evidence.
The authorities are rife with philosophical dissertations having to do with the all-engrossing subject of rights, immunities and liberties of the individual that has intrigued mankind since time immemorial. The rule in Florida accords with the federal rule which, on the authority of Section 605 of the Federal Communications Act (47 U.S.C.A. § 605), commonly known as the "Wire Tapping Statute," excludes such testimony unless obtained with the knowledge or consent of at least one of the conversants, and, as seen from the Griffith case, is predicated on Sections 12 and 22, Declaration of Rights, Constitution of Florida, F.S.A. Thus the rule of exclusion, as applied in the federal and state courts, respectively, depends upon independent statutory and constitutional provisions. The unauthorized procurement of evidence by aid of a mechanical device used to intercept a telephone or telegraph communication is commonly referred to as "wire tapping" and if objected to, is not admissible. However, it is consistently held to be admissible if procured with the consent of one or more of the conversants, even though the person adversely affected had no knowledge of the interception.
In the Griffith case, supra, an investigator obtained the challenged evidence by listening in on one end of a party telephone line, located in his apartment, to conversations between Griffith and others. An electronic device was attached to the receiver in his apartment. This court held, in effect, that where the right exists to record the conversation, a person who is prosecuted on the basis of evidence thus acquired has no standing to complain. There, as in this case, Sections 12 and 22 of the Declaration of Rights, Florida Constitution, and Section 822.10, Florida Statutes, F.S.A., were involved. In that case this court, speaking through Carroll, J., quoted with approval from the decision of the United States Supreme Court in Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134, in which it was held that evidence of an interstate telephone communication, obtained with consent of a conversant, was admissible in a federal prosecution for crime, notwithstanding the provisions of Section 605 of the Federal Communications Act, supra. In that case Rathbun communicated by telephone with one Sparks, who was in Pueblo, Colorado. Anticipating another call from the defendant, Sparks requested that members of the Pueblo Police Department overhear the conversation, and when the defendant again telephoned Sparks two police officers listened to the conversation on a telephone extension in another room of Sparks' home. The action of the trial court in permitting the police officers to testify over objection to the fact that Rathbun threatened Sparks' life was affirmed. We see no logical distinction between the facts in Rathbun and those involved in the case on review. The controlling consideration is that in each instance the party receiving the call consented that it be heard. The fact that in Rathbun the officers listened over a telephone extension in another room, whereas in the case on review the deputy sheriff used a mechanical device by which to more conveniently listen in and accurately preserve the conversation for future use, as was the ultimate objective in both instances, produces such kindred situations as to preclude any attempt to logically differentiate between them. Indeed, when it is remembered that the rule of exclusion was developed during an era when the mechanics of "wire tapping" had not progressed beyond the need to attach a device to telephone wires in order to intercept conversations conducted thereon, as compared to the present-day mechanical wizardry that enables an eavesdropper at substantial distance to accomplish that purpose *860 without any wire connection and with the use of minute electronic devices, the efficacy of the rule becomes submerged in the dilemma of Omar Khayyam's student who "Oft when young did frequent house of sinner and of saint, heard much about it and about, but always came out the door where in [he] went."
In Perez v. State, 81 So.2d 201 (Fla. 1955), the Florida Supreme Court considered the sufficiency of a search warrant that was based on an affidavit by one whose information that a lottery was being conducted at the place to be searched was obtained by having seen a "confidential informant" dial the number of a telephone listed under appellant's name and by having heard the voice of a woman who answered to the name of Teresa respond to the call, and by having heard the ensuing conversation in the course of which the informant bought from Teresa an interest in a lottery. The Florida Supreme Court rejected appellant's contention that the information was not usable because in violation of Section 822.10, Florida Statutes, F.S.A., and held that the statute cannot be construed to mean that what was done by the affiant and the informant in Perez constituted a violation that would render the information thus procured illegal or useless as a basis for establishing probable cause.
Casual examination of Section 822.10, Florida Statutes, F.S.A., reveals a purpose to define as a felony the unauthorized injuring or tapping of telegraph or telephone lines and/or equipment. The statute was obviously designed to protect vested property rights against criminal trespass. It specifically excludes an authorized act of the nature performed by the deputy sheriff in this case who acted with Mrs. Hartley's consent. She had a proprietary interest in the subject telephone conversation of equal dignity to that of the appellant.
We have considered the fact that the telephone conversation here involved was recorded with the aid of a mechanical device that was attached by means of a suction cup to the receiver of Mrs. Hartley's telephone. There seems to be no question but that the deputy sheriff would have been qualified to testify as to the conversation had he directly listened in with Mrs. Hartley. To exclude it on the ground that it was tape recorded would, under the circumstances of this case, amount to straining at a gnat while swallowing a camel.
Affirmed.
WIGGINTON, J., concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissenting).
Charles Edward Barber was convicted of the offense of attempted grand larceny. The trial judge, after hearing extensive arguments founded upon state and federal cases concerning the admissibility into evidence of the contents of the wire recording, finally concluded:
"* * * it would be my position in this case that if she had wanted to she could have turned the telephone over to Mr. Patrick, which is exactly what she did, and he could go ahead and record it with her permission. So, like I say, if you want a point for appeal I think you have got one, but I can't make them all right * * *"
It is my opinion that the trial court committed reversible error by admitting into evidence a tape recording of an intercepted telephone conversation between Appellant and a State witness, one Mrs. Hartley; therefore, the cause should be reversed for new trial.
Olmstead v. United States[1] decided in 1928 is one of the earliest and most cited *861 cases dealing with the subject of wire tapping. There the evidence against the defendant consisted of testimony of federal agents who had monitered defendant's telephone call by means of several wire taps. The Supreme Court held that the evidence so secured was admissible and did not violate the defendant's rights under the 4th and 5th Amendments to the United States Constitution. Justices Brandeis, Holmes, Butler and Stone dissented with Holmes terming the government's action of tapping telephone lines as "dirty business".
Section 605, 47 U.S.Code, was passed by Congress in 1934 as an aftermath of the holding in the Olmstead case. This statute prohibits interception and divulgence of intrastate telephone calls as well as interstate telephone calls and has been considered by the Federal courts along with the 4th and 5th Amendments in construing the admissibility of evidence in cases involving wire tapping and eavesdropping. The decisions, like a pendulum, seemingly swing back and forth arriving at inconsistent conclusions. I think a review of selected federal decisions will be helpful in evaluating the conclusion reached in this dissent.
In United States v. Hill,[2] the question presented was the admissibility of the tape recording of telephone conversations made between defendant and an informer, a special employee of the Bureau of Narcotics. The court in rejecting the admissibility stated:
"The majesty of the law demands that constitutional guarantees and statutory rights be fully enforced even though at times it may result in one charged with crime escaping just conviction. The history of freedom has been the history of respect for and enforcement of due process of law. Our judgments must not be warped by the fact that the defendant is charged with an offense which involves a sordid and shabby business. It is well to recall that `the safeguards of liberty have frequently been forged in controversies involving not very nice people.'"
The case of United States v. Polakoff[3] involved a factual situation analogous to those facts presented here. One Kafton had been indicted for dealing in narcotics. Polakoff and Albert told Kafton if he would plead guilty and pay them a sum of money they would intervene with the assistant in charge of his case, whom Polakoff knew, and seek to get him to recommend to the judge a light sentence. Kafton went to the District Attorney who sent him to agents of the Federal Bureau of Investigation. Employing a telephone in the offices of the Bureau, Kafton's conversation with each of the accused was recorded by Bureau agents upon a machine annexed to an "extension" on the same circuit as that Kafton was using. The prosecution insisted that the evidence was admissible on the ground that Kafton was the "sender" of the message and that in any event the message was not "intercepted." Justice Learned Hand in holding that the evidence so procured was inadmissible stated:[4]
"Moreover, the recording was an `interception'. It is true that in the three decisions in which the Supreme Court has interpreted § 605, Title 47 U.S.Code, 47 U.S.C.A. § 605, the prosecuting agents had physically interposed some mechanism in the circuit as it had been constructed for normal use; at least this is what we understand by a `tap'. That was not the case here; the recording machine *862 was merely fixed to an existing `extension' of the familiar kind in an adjoining room. We assume that the situation would have been no different, had the agent merely listened at the extension, and taken down what he heard by shorthand. The statute does not speak of physical interruptions of the circuit, or of `taps'; it speaks of `interceptions' and anyone intercepts a message to whose intervention as a listener the communicants do not consent; the means he employs can have no importance; it is the breach of privacy that counts.
We need not say that a man may never make a record of what he hears on the telephone by having someone else listen at an extension, or, as in the case at bar, even by allowing him to interpose a recording machine. The receiver may certainly himself broadcast the message as he pleases, and the sender will often give consent, express or implied, to the interposition of a listener. Party lines are a good illustration; and it would be unwise to try in advance to mark the borders of such implications. Here, however, we need not be troubled by niceties, because, no matter what the scope of any such implied consent, it cannot extend to the intervention of prosecuting agents bent upon trapping the `sender' criminally. Violation of the privilege, we are admonished, is so grave a dereliction as to be `destructive of personal liberty' (Nardone v. United States, 302 U.S. 379, 383, 58 S.Ct. 275, 277, 82 L.Ed. 314) and if it is not to be sham and illusion, it must protect its possessor at least against such intrusions. `A decent respect for the policy of Congress must save us from imputing to it a self-defeating, if not disingenuous purpose'. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307. United States v. Yee Ping Jong, D.C., 26 F. Supp. 69, is to the contrary, but does not persuade us."
Appellee insists that Polakoff was overruled by Rathbun[5] in which the Supreme Court held that an officer who by prearrangement with one of the conversants listened to a conversation on a telephone extension, which had not been installed for that purpose but was a regular connection previously placed for normal use, did not constitute an interception within the meaning of Section 605. The Rathbun case did not involve any mechanical invasion of the telephone system. Although I would be the first to admit that the distinction is slight and is more or less straining at a gnat's eyebrow, I cannot help but observe that in the many many cases upon this subject, such minute distinctions have controlled the ultimate admissibility or nonadmissibility of this type evidence, and for this reason I conclude that the Rathbun case does not necessarily overrule or set aside the decision reached in Polakoff.
In further substantiation of my conclusion, I call the reader's attention to the case of Silverman v. United States, 1961.[6] *863 In that case, police officers procured with the owner's permission the occupancy of a row house adjoining the one occupied by the accused. The officers employed a device termed "spike mike", a microphone attached to a spike about a foot long, together with an amplifier, a powerpack and earphones. The officers inserted the spike into the party wall making contact with a heating duct serving the house occupied by the accused, thus converting their entire heating system into a conductor of sound. Conversations taking place in the house under surveillance were recorded and admitted into evidence at the trial over timely objection of Defendants. The court of appeal in affirming the convictions held that the trial court had not erred in admitting the officers' testimony and that the use of the "spike mike" had not violated the communications act of 1934 nor the petitioners' rights under the 4th Amendment. In reaching these conclusions reliance was placed upon the decisions in Goldman v. United States[7] and On Lee v. United States.[8] Justice Stewart, speaking for the Supreme Court, reversed and held that the evidence admitted was procured in violation of the 4th Amendment:[9]
"Inherent Fourth Amendment rights are not inevitably measurable in terms of ancient niceties of tort or real property law. See Jones v. United States, 362 U.S. 257, 266, 80 S.Ct. 725 [733], 4 L.Ed.2d 697, 705, 78 A.L.R.2d 233; On Lee v. United States, supra, 343 U.S. at [page] 752, 72 S.Ct. [967], [at page 971]; 196 L.Ed. at 1274; Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, [95], 96 L.Ed. 59, 64; McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, [192], 93 L.Ed. 153, 157.
"What the Court said long ago bears repeating now: `It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.' Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, [535], 29 L.Ed. 746, 752. We find no occasion to re-examine Goldman here, but we decline to go beyond it, by even a fraction of an inch."
Lopez v. United States[10] approved the introduction into evidence of a wire recording made between an undercover internal revenue agent and the accused Lopez. The conversation so recorded was made in Lopez's office. This case is not factually in point because in the instant cause the Deputy Sheriff recorded a private conversation between Barber and Mrs. Hartley. However, Justice Brennan's dissent concurred in by Justices Douglas and Goldberg included an extensive inquiry into the history of the admissibility of information obtained by eavesdropping, wire tapping and other electronic devices. It constitutes a scholarly dissertation of the innumerable federal cases, law review articles and other sources of jurisprudence pertinent to the subject matter. I will not belabor this dissent with extensive quotations from the Lopez case, but I do recommend it to the reader in pursuing the subject matter. Of particular import is Justice Brennan's following observations:[11]
"But even without empirical studies, it must be plain that electronic surveillance *864 imports a peculiarly severe danger to the liberties of the person. To be secure against police officers' breaking and entering to search for physical objects is worth very little if there is no security against the officers' using secret recording devices to purloin words spoken in confidence within the four walls of home or office. Our possessions are of little value compared to our personalities. And we must bear in mind that historically the search and seizure power was used to suppress freedom of speech and of the press, see Lasson, supra, at 33, 37-50; Marcus v. Search Warrant, 367 U.S. 717, 724-729, 81 S.Ct. 1708, 1712-1714, 6 L.Ed.2d 1127; Frank v. [State of] Maryland, 359 U.S. 360, 376, 79 S.Ct. 804, 813, 3 L.Ed.2d 877 (dissenting opinion), and that today, also, the liberties of the person are indivisible. `Under Hitler, when it became known that the secret police planted dictaphones in houses, members of families often gathered in bathrooms to conduct whispered discussions of intimate affairs, hoping thus to escape the reach of the sending apparatus.' United States v. On Lee, 2 Cir., 193 F.2d 306, 317 (dissenting opinion). Electronic surveillance strikes deeper than at the ancient feeling that a man's home is his castle; it strikes at freedom of communication, a postulate of our kind of society. Lopez' words to Agent Davis captured by the Minifon were not constitutionally privileged by force of the First Amendment. But freedom of speech is undermined where people fear to speak unconstrainedly in what they suppose to be the privacy of home and office. King, Wire Tapping and Electronic Surveillance: A Neglected Constitutional Consideration, 66 Dick.L.Rev. 17, 25-30 (1961). If electronic surveillance by government becomes sufficiently widespread, and there is little in prospect for checking it, the hazard that as a people we may become hagridden and furtive is not fantasy."
After a full analysis of the Federal decisions, I would be less than candid if I did not concede that the Federal courts have fluctuated in their decisions from day to day, from fact to fact, from constitutionality to unconstitutionality and from admissibility to inadmissibility.
Irrespective of the Federal cases on the question, it is my firm conviction that this Court by obiter dictum in Griffith v. State[12] contemplated that such factual situation would come within the provisions of Sections 12 and 22 of the Declaration of Rights of the Florida Constitution, F.S.A. I pause here to comment that rights guaranteed to the citizens of Florida by reason of the State Constitution are just as sacred and should be as readily safeguarded as those contemplated by the provisions of the Federal Constitution, and further, that recognition of these state constitutional rights by the courts of this jurisdiction will serve as a beacon of light for the enlightenment of those in the Federal structure who are so quick to hold that state action is contra to those rights safeguarded by the Federal jurisprudence. In my opinion, Judge Carroll, speaking for this Court in Griffith v. State[13] correctly foresaw rejection of such evidence:
"Nevertheless, despite this conclusion, we are so deeply concerned with the potential dangers of wiretapping to our American way of life, to our sacred liberties and our democratic society, and to our concept of fair play, that we have reached the further conclusion that wiretapping violates Sections 12 and 22 of the Declaration of Rights of the Florida Constitution, F.S.A. Section 12 of the *865 Declaration of Rights provides, in part:
"`No person shall be * * * compelled in any criminal case to be a witness against himself * * *.'
"Section 22 of the Declaration of Rights provides:
"`The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches, shall not be violated and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized.'
"Our reasoning behind this conclusion follows along the line of the reasoning in the dissenting opinion in the case of Olmstead v. United States, 277 U.S. 438, 48 S.St. (Sic.) 564, 72 L.Ed. 944. Paraphrasing this reasoning, we think that tapping telephone wires and listening in by law enforcement officers constitutes a search for evidence and hence comes within the purview of the Declaration of Rights, establishing the rights of the people of this state to be secure in their persons, houses, papers, and effects, against unreasonable searches for evidence by law enforcement officers through the device of tapping telephone wires. We further hold that the use as evidence of conversations overheard through wiretapping in effect compels a defendant in a criminal case to be a witness against himself, in violation of Section 12 of the Declaration of Rights." (Emphases supplied.)
Applying the facts here disclosed to the foregoing emphasized statement, we find a Deputy Sheriff attaching a tape recording machine to a telephone instrument unknown to one of the conversants and recording his telephone conversation with another party. The contents of this tape recording are then placed into evidence and broadcast to a trial jury in the ensuing trial of the accused. It is significant that the defendant in the case sub judice did not take the stand and did not testify. The tape recording was not used for the purpose of impeachment or for any other secondary evidential purpose. It was used as primary evidence by the state prior to resting its case and defendant's voice testified to the jury in this case just as surely as if he had been required to have taken the stand. Thus, by the eavesdropping-wire-tapping action of the police officers in this cause the defendant's own words in what he thought was a private conversation were used against him contrary to the guarantees afforded him by the Constitution of the State.[14] As stated by Justice Brandeis in his dissent in Olmstead,[15] wherein he quoted from Entick v. Carrington, 19 Howell's State Trials 1030:
"`It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public *866 offense  it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence of a crime or to forfeit his goods, is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other.'"
I, therefore, dissent.
NOTES
[1] Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928).
[2] United States v. Hill, 149 F. Supp. 83, 86 (S.D.N.Y. 1957).
[3] United States v. Polakoff, 112 F.2d 888, 134 A.L.R. 607 (2d Cir., 1940).
[4] Id. at 889.
[5] Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1958).
[6] Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, 97 A.L.R. 2d 1277 (1961). Also see Cullins v. Wainwright, 328 F.2d 481 (1964), 5th Circuit Court of Appeals, which set aside a conviction in the State of Florida. There police officers lowered a microphone down the air shaft opposite the Defendant's apartment. The microphone was wired to recording and listening devices operated by the officers in an apartment located on the upper floor. With this electronic equipment the officers overheard conversations between those in the apartment. The state contended that there was no physical invasion of the premises occupied by defendants. The Fifth Circuit Court of Appeals concluded that to indulge in the fine distinctions drawn by the state would permit a conclusion which would ignore the practical realities of the situation and that the lowering of the microphone into the ventilating shaft was an invasion.
[7] Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, 97 A.L.R.2d 1281.
[8] On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.
[9] Silverman v. U.S., supra, 365 U.S. at 511, 81 S.Ct. at 682, 5 L.Ed.2d 734, at 97 A.L.R.2d 1282, 1283.
[10] Lopez v. U.S., 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).
[11] Id. 83 S.Ct. at 1404.
[12] Griffith v. State, 111 So.2d 282 (Fla. App.1st, 1959).
[13] Id. at 287.
[14] Even the telephone directory advises: "If you hear a short `beep' tone on your telephone about every 15 seconds, it means that the person with whom you are talking is recording your conversation. This signal is provided by the Telephone Company for your protection. Use of a recorder without this signal is unlawful. If you do not want a record made of what you are saying, ask the person with whom you are taking to disconnect the recording machine. When he disconnects, you will no longer hear the `beep' tone." (Emphasis supplied.)
[15] Olmstead, supra, 48 S.Ct. at 571.