CARROLL, DONALD K.', Judge.
In two consolidated cases the appellant was tried for and convicted of the crimes of attempting to sell an unborn child and of dispensing L. S. D. and introducing contraband upon the grounds of the Leon County jail, and has appealed from his judgments of conviction and sentence, based upon a jury verdict.
The main question presented for our determination in this appeal is whether the trial court erred in allowing the State to play before the jury three recorded telephone conversations which a jail inmate, Jess Davis, made with the appellant, under the direction of Lieutenant Larry Campbell, who was in charge of the Detective Division of the Leon County Sheriff’s office.
The essence of the appellant’s contention on this question is that the taped conversations between the appellant and Davis were improperly admitted into evidence at the trial. The trial testimony pertinent to this main question before us establishes the following facts:
While the appellant, Tollett, was in the county jail with one Jess Davis, the latter contacted Lieutenant Campbell and advised him that Tollett was talking about drugs. The officer asked Davis if he would be willing to help him with Tollett by “making a buy,” but Davis declined-to offer this assistance because it was his desire to rehabilitate Tollett. Later Davis and Campbell decided to “set” Tollett up to make a “buy” because Davis was in Tollett’s confidence.
On April 22, 1969, after Tollett had been released from jail, Campbell went to the jail and told Davis that he wanted the latter to come to his private office in the Leon County Courthouse and telephone Tollett. In that place and with the use of Campbell’s private telephone, the officer placed a recording dictaphone machine on the telephone and recorded the conversation between Davis and Tollett.
On October 24 and 25, 1969, Davis again made telephone calls to Tollett from the telephone in Campbell’s office in the said courthouse, a dictaphone recording device being used.
Two of the three recorded calls were made to Tollett’s home and the third to Tollett’s office.
Campbell testified at the trial that Davis consented to Campbell’s said monitoring and recording of the said telephone conversations with Tollett, consenting freely and voluntarily, that he, Campbell, did not threaten Davis in any manner in order to secure his cooperation.
Campbell listened to the telephone conversations between Davis and Tollett on an extension telephone.
In his main appellate brief the appellant refers to what he calls the old rule of consent that “the consent of one of the con-versants to the telephone conversation must be given to the authority who desir'es to tape and record the communication. * * ” He cites as an authority for the said rule this court’s decision in Barber v. State, 172 So.2d 857 (Fla.App.1968).
The mentioned rule is well expressed by the writer of the annotation in 9 A.L.R.3rd at page 434, as follows:
“Where an informer called the defendant, consented to the overhearing or recordation of the call, and the call was overheard or recorded at the informer’s *460 end of the line, without the knowledge of the defendant, it has been held that regardless of the type of device used to transmit the call to the eavesdropper or recorder, there has been no prohibited ‘interception.’ ”
Cited in support of this quoted rule are the decisions of this court in Griffith v. State, 111 So.2d 282 (Fla.App. 1959) and Barber v. State, 172 So.2d 857 (Fla.App. 1965), the decisions in five other states, and numerous federal decisions.
In Griffith v. State, supra, an officer rented a nearby apartment which had a telephone on the same party line as the suspect’s telephone and the officer tapped the line in his apartment. We held that the officer’s actions did not constitute an illegal wire tap, basing our decision largely upon several decisions of the United States Supreme Court, particularly Rath-bun v. United States, 355 U.S. 107, 78 S. Ct. 161, 2 L.Ed.2d 134 (1957).
In the later case of Barber v. State, 172 So.2d 857 (Fla.App. 1965), this court discussed the Griffith and Rathbun cases, supra, and many other authorities, and recognized the following rule:
“The unauthorized procurement of evidence by aid of a mechanical device used to intercept a telephone or telegraph communication is commonly referred to as ‘wire tapping’ and if objected to, is not admissible. However, it is consistently held to be admissible if procured with the consent of one or more of the conversants, even though the person adversely affected had no knowledge of the interception.”
In the Barber case the sole question of law to be resolved on that appeal was “whether the trial court erred in admitting in evidence, over Barber’s objection, a tape recording, made without his knowledge, of a telephone conversation between him and Mrs. Hartley, the prosecuting witness, which recording was procured before his arrest and with Mrs. Hartley’s consent by means of wires that were attached by a deputy sheriff to the telephone receiver used by her in communicating with Barber.” We held that the trial court did not so err, pointing out that the deputy sheriff had acted with Mrs. Hartley’s consent. In conclusion we said:
“We have considered the fact that the telephone conversation here involved was recorded with the aid of a mechanical device that was attached by means of a suction cup to the receiver of Mrs. Hartley’s telephone. There seems to be no question but that the deputy sheriff would have been qualified to testify as to the conversation had he directly listened in with Mrs. Hartley. To exclude it on the ground that it was tape recorded would, under the circumstances of this case, amount to straining at a gnat while swallowing a camel.”
In view of the foregoing authorities we hold that the above-discussed “rule of consent” is applicable in the case at bar, assuming that there was competent substantial evidence at the trial from which the jury could have reasonably concluded that Davis gave his express or implied consent to Campbell’s tapping and recording of the telephone conversations with the appellant.
In this appeal, however, the appellant strongly contends that the only evidence of Davis’ consent was inadmissible as hearsay evidence, especially since Davis did not testify at the trial.
This contention requires our examining in depth the evidence of consent adduced at the trial. We find in the trial transcript that Campbell testified that “I told the informant, Jess Davis, that I wanted him to come to the Sheriff’s office with me and make a telephone call to Ted Tol-lett. I transported him to the Sheriff’s office. I explained the manner in which the recording device worked on the telephone and demonstrated it to him so that he would know exactly what I was doing *461 and what would be needed, and explained to him to speak in a clear manner, et cetera. At that time I had him dial the number. I turned the machine on as the numbers were being dialed and recorded the entire conversation. At the conclusion of it I witnessed it, dated and put the time on the statement and had Mr. Davis also witness it.”
Campbell then testified that he did not coerce Davis in any manner in order to assist him in this case, and did not force Davis to do so; that he did not threaten or intimidate Davis in any manner in order to secure his assistance and cooperation; that he did not promise Davis any reward of any kind; and that Davis did “consent to do this.” The appellant’s objection to this testimony was overruled by the trial court. In our opinion, the court properly so ruled. Campbell’s testimony was competent and pertinent to the pivotal question of whether Davis impliedly consented to the recording of his telephone conversation with the appellant. As so viewed, that testimony did not constitute hearsay in the true meaning of that term, for Campbell was not testifying as to what Davis had said, but as to the conduct of Davis from which the jury could reasonably conclude that Davis had impliedly consented to Campbell’s recording of the telephone conversation with the appellant.
In his above testimony, fairly and correctly considered, Campbell testified in essence concerning what Davis did when Campbell advised him about the plan to record the telephone conversation with the appellant. Such testimony was, in essence, what Campbell saw Davis do, not what Campbell heard Davis say. That testimony was, therefore, not hearsay evidence, under the general rule correctly stated in Florida Jurisprudence, vol. 13, Sec. 208, as follows:
“Generally speaking, hearsay evidence is what a witness heard another say, as distinguished from what he saw him do, and is most often manifested in the form of a statement made by a third person not produced as a witness. It is evidence that derives its value, not solely from the credit to be attached to the witness himself, but also in part because of the veracity and competency of some other persons from whom the witness may have received his information. The most frequently cited objections to hearsay evidence are that it does not afford cross-examination essential to the proper focus to the truth, and if admitted would lack the sanction of an oath.”
As an example of this general rule, the Supreme Court of Florida said in Hughes v. State, 61 Fla. 32, 55 So. 463 (1911):
“The court did not err in denying the motion to strike the testimony of the witness C. C. Croft with reference to what he saw the said Joe Welch do. What the witness saw Joe Welch do was not hearsay, as contended. The motion was not to strike the testimony as to what Joe Welch told the witness. The other objection, that the testimony was immaterial and irrelevant, is too general. What the witness saw Joe Welch do on that occasion was material and not irrelevant.”
We have considered the other contentions made by the appellant in this appeal and find them to lack substantial merit.
For the foregoing reasons the judgments appealed from herein must be and it is
Affirmed.
WIGGINTON, Acting C. J., concurs.
RAWLS, J., dissents.