PEOPLE OF STATE OF NEW YORK v. BENNETT.

(Circuit Court, S. D. New York. January 14, 1902.)

1. REMOVAL OF CAUSES—CRIMINAL PROSECUTIONS—DENIAL OF EQUAL CIVIL RIGHTS.

Rev. St. § 1977, which declares that all persons shall have the same right to the equal benefit of all laws for the security of persons and property as is enjoyed by white persons, and shall be subject to like punishment, etc., has no bearing on a prosecution under Pen. Code N. Y. § 351, which provides for the punishment of persons who keep or occupy rooms for recording or registering wagers or selling pools, or who receive, record, or register the money of others bet or wagered, etc., the state statutes not subjecting white persons to one kind of punishment and other persons to another; and therefore the prosecution is not removable into a federal court, within Rev. St. § 641, authorizing the removal of criminal prosecutions against any person who is denied or cannot enforce in the state tribunal any right secured to him by any law providing for the equal civil rights of citizens of the United States.

2. SAME—DENYING EQUAL PROTECTION OF LAWS.

Laws N. Y. 1895, c. 570, which provides that any one who records a wager by some memorandum in his own possession, and does not transfer any memorandum thereof, shall not be punishable criminally if he makes that record on certain race courses authorized by the act, but shall be punished criminally if he makes it elsewhere, is not repugnant to the fourteenth amendment of the federal constitution, providing that no state shall deny to any person within its jurisdiction the equal protection of the laws, no class being discriminated against in the statute, but every one recording a wager on any other place than the race course being punishable; and therefore a prosecution for a violation of the statute is not removable into a federal court, within Rev. St. § 641.

Motion to Remand to State Court.

Charles E. Lebarbier and Joseph S. Auerback, for the motion. John R. Dos Passos, opposed.

LACOMBE, Circuit Judge. This is a criminal prosecution of one Charles Bennett, who was indicted on four counts: (1) Keeping and occupying a room for the purpose of therein recording and registering bets and wagers and of selling pools upon the result of horse races; (2) keeping, exhibiting, and employing devices and apparatus for the purpose of recording bets and wagers and of selling pools upon the result of horse races; (3) recording and registering bets and wagers upon the result of horse races; (4) receiving, registering, and recording money bet and wagered upon the result of horse races,—all the above offenses being committed, as alleged, in a building in the city of New York, and not upon any race course such as is provided for in chapter 570 of the Laws of 1895. These acts are declared to be felonies, and punishable by imprisonment in the state prison, by section 351 of the Penal Code of New York. That section, it may be noted, defines the last above enumerated offense as receiving, registering, and recording any money bet or wagered, or offered for the purpose of being bet or wagered, "by or for any other person." Apparently the section does not prohibit an individual from merely betting or wagering his own money, so long as he does not complicate that transaction with recording, registering, keeping a room, using devices and apparatus, etc., and does not engage in pool-selling or bookmaking. "Bookmaking" imports some method of recording bets; "pool-selling" imports a transaction where the money of some person other than the seller of the pool is to be received by him. The indictment does not specifically aver that Bennett received, registered, and recorded money bet or wagered "for any other person," but the papers show that that is what he did in fact do. The act of 1895, supra, provides that any person who, upon certain race courses authorized by the act, shall make or record any bet or wager on the result of a horse race taking place thereon shall be liable in a civil action to recover the amount of such wager, and shall not be liable criminally, provided he does not exchange, deliver, or transfer any record, registry, memorandum, token, paper, or document of any kind as evidence of such bet or wager, and does not subscribe by name, initial, or otherwise any record, registry, or memorandum in the possession of another person, of a bet or wager, intended to be retained by such other person, or any other person, as evidence of such bet or wager. The result of an analysis of these acts—and they are the only ones to which the court's attention is directed by this motion— seems to indicate: First. That certain acts, viz., keeping a room, or occupying a stand, etc., with books, apparatus, etc., for recording or registering bets or wagers; receiving, registering and recording the money of others bet or wagered; becoming the custodian, etc., for hire, of money wagered; pool-selling, etc.,—are prohibited, and punishable criminally wherever committed. Second. That a person who bets his own money on the result of a horse race is not punishable criminally, wherever he bets it. Third. That an individual who records a wager (his own or that of some one else) by some memorandum in his own possession, and does not transfer any memorandum or token thereof, shall not be punish-

able criminally if he makes that record on the race course, but may be punished criminally if he makes it elsewhere. Incidentally it may be noted that, according to the evidence, Bennett took another person's money, offered for the purpose of being bet or wagered on a horse race,—an act which would have been punishable criminally if committed on a race course. The cause may be disposed of, however, as if his acts were only those charged in the count, which is silent as to the fact that he registered and recorded money bet and wagered by another person. This cause was removed to this court under section 641, Rev. St. U. S., which provides for such removal when any criminal prosecution is commenced in any state court "against any person who is denied or cannot enforce in the judicial tribunals of the state * * * any right secured to him by any law providing for the equal civil rights of citizens of the United States." To warrant removal, it must be shown affirmatively that the defendant is denied or cannot enforce some right secured to him by some law of the United States providing for the equal civil rights of its citizens.

Defendant refers to section 1977, Rev. St. U. S. That provides that "all persons * * * shall have the same right * * * to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white persons, and shall be subject to like punishment, pains, penalties, * * * and no other." This section has no bearing on the case at bar. The state statutes do not subject "white persons" who make, register, and record bets and wagers and commit the other acts above enumerated to one kind of punishment and penalty and other persons to some other kind.

Defendant also refers to the fourteenth amendment to the constitution of the United States. Neal v. Delaware, 103 U. S. 392, 26 L. Ed 567, is authority for holding that the words "any law providing for the equal civil rights of citizens of the United States," in section 641, are broad enough to cover this amendment. The amendment provides that "no state shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Defendant contends that the statutes of the state deny the equal protection of the laws, because they punish individuals criminally for acts committed in one place, and not for the same acts committed elsewhere. In the multitudinous authorities construing the amendment, most of which are cited in the briefs, no case is found which sustains this proposition, or which holds that the state may not differentiate crimes and punishments as it pleases, so long as such differentiation is not an effort, more or less disguised, to discriminate against a class of persons by reason of their race, or color, or some other individual distinction. There is nothing of that sort here. No class is discriminated against. Every one, whoever he may be, who records a bet or wager in any other place than the race course, is subjected to the same punishment. No one who

merely records such bet when he is on a race course is subject to any punishment. It seems preposterous to hold that the fourteenth amendment precludes a state from making the commission of some particular act a crime if committed in the streets of a crowded city, or in a church, or a public building, or on navigable waters, or on the seashore, or at night, and no offense if committed on the highway in some sparsely settled rural district, or in the open country, or on nonnavigable waters, or in the mountains, or by daylight. The amendment provides that:

"In the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. * * * But legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923. In Moore v. Missouri, 159 U. S. 678, 16 Sup. Ct. 181, 40 L. Ed. 301, the court says:

"The fourteenth amendment means 'that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.' Missouri v. Lewis, 101 U. S. 22, 25 L. Ed. 989. The general doctrine is that that amendment in respect to the administration of criminal justice requires that no different degree or higher punishment shall be imposed on one than is imposed on all for like offenses; but * * * the state may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offenses than for a first offense against the law, and that a different punishment for the same offense may be inflicted under particular circumstances, provided it is dealt out to all alike who are similarly situated. Pace v. Alabama, 106 U. S. 583, 1 Sup. Ct. 637, 27 L. Ed. 207."

In the case last cited the statutes of Alabama made the living in adultery or fornication an offense, prescribing a certain penalty, and further provided that, if one of the couple were white and the other of the African race, the penalty should be greater. The United States supreme court sustained the statute. The cases cited on the brief of counsel for defendant, in which it was held that the state statute or ordinance was obnoxious to the amendment are these: Yick Wo v. Hopkins, 118 U. S. 367, 6 Sup. Ct. 1072, 30 L. Ed. 220. The board of supervisors of San Francisco passed an ordinance providing, in substance, that it should be unlawful to conduct the laundry business in frame buildings within the city limits unless a permit therefor was first obtained from the board of supervisors. It appeared that there were some 320 laundries in the city. 310 of them were in frame buildings, and of these about 240 were owned and operated by Chinese. It further appeared that upon application the required permit was given by the supervisors to all persons but the Chinese, but was refused to all the latter. The supreme court held that this constituted a species of class legislation, which was prohibited by the constitution. It said:

"In the present cases we are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms offered, of unequal and unjust discrimination in their administration; for the cases present the ordinances in actual operation, and the facts shown establish an administra-

tion directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the fourteenth amendment to the constitution of the United States. Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. * * * The fact of this discrimination is admitted. No reason for it is shown, and the conclusion cannot be resisted that no reason for it exists except hostility to the race and nationality to which the petitioners belong, and which, in the eye of the law, is not justified. The discrimination is therefore illegal, and the public administration which enforces it is a denial of the equal protection of the laws, and a violation of the fourteenth amendment of the constitution."

To the same effect is the decision in Ho Ah Kow v. Nunan, 5 Sawy. 552, Fed. Cas. No. 6,546, where an ordinance directed that the hair of persons confined in jail should be cut, the object sought being to inflict an additional punishment upon the Chinese prisoners.

In Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664, it was held that, where state statutes secure to every white man the right of trial by a jury selected from and without discrimination against his race, and at the same time requires such discrimination against the colored man because of his race, they are obnoxious to the fourteenth amendment.

In Railroad Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, the statute provided that individuals who had claims against railroad companies might, upon recovery, in addition to damages, interest, and costs, include an attorney's fee in the judgment entered. Of this the court says:

"It is simply a statute imposing a penalty upon railroad corporations for a failure to pay certain debts. No individuals are thus punished, and no other corporations. The act singles out a certain class of debtors, and punishes them, when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They cannot appeal to the courts as other litigants. under like conditions, and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff. If it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorney's fees if wrong. They do not recover any if right, while their adversaries recover if right, and pay nothing if wrong. In the suits, therefore, to which they are parties, they are discriminated against. and are not treated as others. They do not stand equal before the law. They do not receive its equal protection. All this is obvious from a mere inspection of the statute."

In Cotting v. Godard (Nov. 25, 1901) 22 Sup. Ct. 30, 46 L. Ed. ——, the statute which was held invalid provided that any stock-yards corporation doing more than a certain amount of business (which statute applied to only one corporation) should not be permitted to charge more than a certain tariff of fees and charges, and that any violation should be punished by fine and imprisonment.

In the Stockton Laundry Case (C. C.) 26 Fed. 611, the ordinance made it an offense for any person to carry on a laundry where clothes were washed for pay within the habitable portion of the city. The court held that this violated that clause of the fourteenth amendment which says: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

The legislation condemned in Re Parrott (C. C.) 1 Fed. 481, prohibited any corporation from employing any Chinese or Mongolian in any capacity whatsoever.

In Gibson v. Mississippi, 162 U. S. 565, 16 Sup. Ct. 904, 40 L. Ed. 1075, the question discussed was legislation which should deny to citizens of the African race, because of their color, the right or privilege accorded to white citizens of participating as jurors in the administration of justice.

In none of these cases is there found authority for the proposition that the state may not, without violating the fourteenth amendment, prescribe a penalty for the commission of acts in certain specified localities, when the same acts, if committed in some other locality, are not prohibited, when it is not apparent that the legislation is directed against any class of persons whose classification is predicated upon anything else than the commission of the acts condemned. On the contrary, legislation of this character has been sustained in the federal courts. In U. S. v. Ronan (C. C.) 33 Fed. 117, it appeared that the statutes of Georgia provided that no license to retail spirituous liquors should be granted except in incorporated cities or towns, unless with the written consent of 10 of the nearest residents. It was held that the exception in favor of such towns and cities was not unconstitutional as denying to saloon keepers in the counties the equal protection of the laws secured to citizens by the fourteenth amendment. In Re Ah Kit (C. C.) 45 Fed. 793, a city ordinance making it a punishable offense to visit any gambling place located within certain specified limits (which designate what is known as the "Chinese Quarter"), and which ordinance applied to all alike, white men as well as Chinese, irrespective of race or color, was held not to be within the language of the fourteenth amendment.

For these reasons defendant has not made out a case which would warrant removal under section 641, and the motion to remand is granted.