222 So.2d 760 (1969)
Robert Earl WALKER, Appellant,
v.
The STATE of Florida, Appellee.
No. 68-516.
District Court of Appeal of Florida. Third District.
May 6, 1969.
Rehearing Denied June 11, 1969.
*761 Robert L. Koeppel, Public Defender, and Gregory B. Hoppenstand, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and Harold Mendelow, Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY and SWANN, JJ.
HENDRY, Judge.
The appellant, Robert Earl Walker, was informed against for the crimes of robbery and assault with intent to commit murder in the first degree with a firearm. He pleaded not guilty to these charges, and as to the charge of robbery, he raised the affirmative defense of entrapment. Upon trial, he was found guilty by the jury of robbery and not guilty of the other charge. He was adjudicated guilty pursuant to the verdict of the jury and sentenced to twenty years confinement in the state penitentiary. The court denied a motion for new trial and the defendant has taken this appeal.
The evidence tends to show that the defendant was a uniformed police officer working part time at a Jai Alai fronton; that he suggested to one Matthews, an employee of Wells Fargo Armored Service, that he allow the defendant and "pros" to "hold him (Matthews) up" with the understanding that no one would be hurt and that Matthews would get his cut of the money. Matthews reported the proposition to his employer and the F.B.I. who persuaded him to pretend to acquiesce to appellant's plan and help set up the robbery. Thereafter, Matthews went out to the fronton and told the defendant that he would go along with the robbery plan. Matthews arranged a meeting with the defendant, the "pro", and himself to take place at the Orange Bowl Stadium. The police and the F.B.I. put a microphone and transmitter on the person of Matthews and sent him to the meeting equipped to record the conversations of the parties. Thereafter, there were numerous telephone conversations between the defendant and Matthews in which the proposed robbery was discussed. These conversations were recorded by the police with the knowledge and consent of Matthews.
On the night of April 28, 1967, Matthews and his helper arrived at the Turnpike Drive-In Theater in an armored truck containing quite a large sum of money. The armored truck and its contents were taken from them at the point of guns and under threats of bodily harm. The evidence tends to show that next, the robbers drove the armored truck a short distance, whereupon they transferred themselves and the bags of money to a Volkswagen sedan. At that point, the numerous police officers who had staked-out the drive-in theater began an exchange of gunfire with the fleeing robbers, *762 wherein one of the car's occupants was killed. Gunfire was returned by the robbers during this period, and that return formed the basis for Count II of the information.
Appellant was somehow able to escape from the Volkswagen and sought to hide in an adjacent marshy area. He was apprehended soon thereafter.
The first point on appeal is whether the trial court erred by admitting into evidence and permitting the jury to listen to tape recorded conversations taken by the police using a wire tap and microphone hidden on the person of witness Matthews.
There are numerous tape recordings involved herein. They may be broadly classified as follows: (1) a tape recording which was made at the Orange Bowl Stadium when Matthews carried with him a hidden microphone which transmitted the conversations to police officers. There are over 150 parts of that tape recording wherein the conversation is unintelligible; (2) tape recordings which were made of the numerous telephone conversations between Matthews and the defendant, such calls having been made by Matthews from his own home, between April 17 and April 22, 1967. The state's introduction of these tapes into evidence was designed to destroy the appellant's affirmative defense of entrapment. The tapes contain numerous references by Matthews, who was at the time of the conversation aware that the recordings were being made, to the fact that the appellant was the originator of the robbery plan. Moreover, the record reveals a crucial conflict between the testimonies of Matthews and the appellant as to which of these two parties was, in fact, the instigator of the robbery plan. Thus, if the tape recordings were improperly admitted into evidence and played to the jury, prejudicial and reversible error has occurred.
First, we shall treat appellant's contentions that the tape recording which was obtained when Matthews met with the appellant and another "robbery pro" at the Orange Bowl was improperly admitted. One of the earliest determinations in the State of Florida as to the admissibility of such a tape recording was made by this court in the case of Gomien v. State, Fla. App. 1965, 172 So.2d 511. There, the state's witness was wired with a microphone and transmitter for the purpose of sending conversations he was having with the defendant to a nearby police officer controlling a tape recorder. The witness himself, as well as the officer operating the recording equipment, testified at the trial. We held the tape recording to be properly admissible once the authenticity of said recording was established. Additionally, we also held in the Gomien case that the mere presence of inaudible and unintelligible portions did not make the tape inadmissible.
In Hajdu v. State, Fla.App. 1966, 189 So.2d 230 a factual pattern distinguishable from the case at bar was presented to this court. In holding certain tape recordings to have been inadmissible against the defendant, we did inferentially authorize the use of such recordings when the actual recipient of the conversation who himself carried the transmitting device was put on the stand. Although such requirement was not fulfilled in Hajdu, the record shows that it was so fulfilled in this case.
Turning to our Federal jurisdiction, we find the case of Lopez v. United States, 1963, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, to be directly on point. In Lopez, the U.S. Attorney's chief witness, an internal revenue agent, was solicited by the defendant to take a bribe. After the initial overtures, the tax agent returned to the defendant's office about one week later with a wire recorder hidden on his person. The U.S. Supreme Court held that once the agent was in the office with the consent of the defendant, the recording device was used only to obtain the most reliable evidence possible with regard to their conversation, and was not planted in a manner which violated the fourth amendment.
In the case of Dancy v. United States (5th CA 1968), 390 F.2d 370, an informer working for government agents was wired *763 with a transmitter. He purchased narcotics from the defendant, and during the transaction their conversations were recorded by Federal agents posted nearby. The Lopez case, supra, and a long line of prior federal cases pertaining to the admissibility of tape recordings, were used to sustain the admissibility of the recordings in the Dancy case.
Finally, in our recent decision in Parnell v. State, Fla.App. 1969, 218 So.2d 535, this court again ruled on the admissibility of a particular tape recording which was made by an undercover police officer while he was engaged in an illegal transaction with a dealer in stolen goods. In that case, we reaffirmed our holding in Gomien, supra, as to the necessary prerequisites for the introduction of the tape recording into evidence. There is no noticeable or significant distinction between the facts as they exist here and as they existed in Parnell, supra, Lopez, supra, Dancy, supra, or Gomien, supra.
Thus, based on the authorities set forth above, we hereby hold that the trial court did not err when it admitted the tape recording made at the Orange Bowl Stadium meeting of the state's witness, Matthews, and the appellant. Neither the method used to obtain the recordings, nor the particular occurrences of inaudibility appear to make the tape recordings inadmissible.
Turning to the recordings of the phone conversations, we find the law appears clear and well-settled as to the prerequisites which govern the admissibility of the recordings made by the use of a wire tap on a telephone. Here, Matthews gave his consent to the police authorities to attach the wire tap to his telephone. Once that consent has been obtained, recordings made by police authorities pursuant thereto are admissible in evidence. Barber v. State, Fla.App. 1965, 172 So.2d 857.
Appellant's second point on appeal argues that the trial court improperly adjudicated the appellant guilty of the crime of robbery, and erred when it refused to grant the appellant's motion to reduce the charge to grand larceny. We find no substantial merit to appellant's contention. The record adequately shows that all the elements of the crime of robbery were present. Moreover, it cannot be seriously maintained that the complicity of the witness Matthews, in his role as informer for the police, amounted to such consent on behalf of the possessor of property as to defeat the element of robbery which requires the taking of the property of another, without his consent, by force or fear of force.
Affirmed.