272 So.2d 490 (1973)
Ted C. TOLLETT, Petitioner,
v.
The STATE of Florida, Respondent.
No. 40993.
Supreme Court of Florida.
January 10, 1973.
*491 Tom E. Gilman, Tallahassee, for petitioner.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for respondent.
ERVIN, Justice.
By petition for writ of certiorari we have for review a decision of the District Court of Appeal, First District, holding certain recordings of conversations between Petitioner and another person were properly played for the jury during Petitioner's trial. Tollett v. State, Fla.App. 1971, 244 So.2d 458. We have jurisdiction to consider the cause by virtue of a conflict with Walker v. State, Fla.App. 1969, 222 So.2d 760. Article V, Section 4(2), Florida Constitution, F.S.A.; Rule 4.5(c), F.A.R., 32 F.S.A.
Petitioner Ted Tollett, while incarcerated in the Leon County Jail on a possession of marijuana charge, became friendly with a cellmate, one Jess Davis. Captain Campbell,[1] of the Leon County Sheriff's Department, testified that he asked Davis "if he would be willing to help me with Mr. Tollett on making a buy." Davis refused at first; however, he later agreed to work with Campbell.
On four succeeding days following Tollett's release from jail, Davis, at Campbell's instruction, telephoned Tollett. Three of the calls were made from Campbell's office in the Leon County Courthouse. The fourth was made from the Leon County Jail. The conversations between Tollett and Davis made while the latter was in Campbell's office were recorded. The telephone call made while Davis was at the jail was not recorded; however, Campbell listened on an extension telephone.
Pursuant to the instructions given him during the telephone conversations, Tollett came to the jail allegedly for the purpose of selling drugs to Davis. He also went to a motel room to discuss with one posing as Ray Johnson from Tennessee the sale of Mrs. Tollett's unborn child. Johnson was actually Ray Frederick, a special agent with the Florida Bureau of Law Enforcement. *492 The conversation between Tollett and the agent was also recorded.
Tollett and his wife were arrested and charged with attempting to sell an unborn baby and delivering and dispensing contraband at the Leon County Jail. At trial, over defense objections, the recordings were played for the jury. Davis was not present as a witness. No explanation appears in the record as to why Davis was not called by the State as a witness or any reason given for his unavailability. Captain Campbell testified that Davis had consented to having his conversations with Tollett recorded. Both defendants were found guilty of attempting to sell the child; Petitioner was also found guilty of dispensing LSD and contraband to a prisoner.
Petitioner appealed to the First District Court of Appeal. In a 2-1 decision that court affirmed Petitioner's conviction, saying the recordings were properly played before the jury. The court cited Florida authorities holding such recordings admissible when made with the consent of one or more of the conversants. (I. e., Barber v. State, Fla.App. 1965, 172 So.2d 857, and Griffith v. State, Fla.App. 1959, 111 So.2d 282.) While Davis was not present to testify that he had consented to the wiretaps, the District Court majority said Capt. Campbell had properly testified as to Davis' consent and that Campbell's evidence enabled the jury to have "reasonably concluded that Davis gave his express or implied consent to Campbell's tapping and recording of the telephone conversations with [Tollett] ..."
This decision conflicts with the decision of the Third District Court of Appeal in Walker v. State, supra. The Third District Court in Walker referred to its earlier decision in Hajdu v. State, Fla.App. 1966, 189 So.2d 230, and said such recordings could be introduced into evidence "when the actual recipient of the conversation who himself carried the transmitting device was put on the stand." Walker, supra, 222 So.2d at 762.
Respondent contends Petitioner's constitutional rights were not violated and in support of this position the State cites Florida and Federal cases holding recordings made under circumstances similar to those in this case may be properly played for juries. We do not feel those cases are controlling.
In its most recent consideration of this question, the Supreme Court of the United States, in a sharply divided decision, held the Fourth Amendment to the United States Constitution does not forbid electronic surveillance made with the consent of one or more of the conversants. United States v. White, 1971, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453. The Court said such recordings could be played before a jury even though, as here, the consenting party was not available at trial. In reaching this decision, the Court said that since one speaking with a defendant could testify as to what the defendant said, a recording of such a conversation should also be permissible evidence. According to the Court, "No different result should obtain where ... the informer disappears and is unavailable at trial; for the issue of whether specified events on a certain day violate the Fourth Amendment should not be determined by what later happens to the informer." (Emphasis added.) White, supra, 753-754, 91 S.Ct. 1127.
The result in White, as well as in the other cases relied upon by the State, is based upon an interpretation of the Fourth Amendment to the Constitution of the United States. The Amendment provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Florida's Constitution, before it was revised in 1968, contained a virtually identical *493 search and seizure provision. The provision was changed, however, when the Constitution was revised. We must look to the search and seizure provision of the 1968 Constitution and for this reason the Federal and pre-1968 Florida cases which are based upon the Fourth Amendment to the United States Constitution and the pre-1968 Florida Constitution and which are relied upon by Respondent cannot be considered controlling. The applicable Florida constitutional provision, found in Article I, is as follows:
"§ 12. Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence." (Emphasis added.)
Thus Section 12 of Article I of the Constitution expressly provides that no warrant shall be issued to intercept a particular communication except upon probable cause supported by affidavit. In Florida, at least, the protection of privacy in the area of communications is constitutionally mandated in express language. This Court is not at liberty to relax this protection afforded by the State Constitution.
The interceptions in the instant case were unquestionably "unreasonable." Under the language of Section 12 of Article I of the 1968 Constitution, the recordings should not have been made by the officer unless he had first obtained an interception warrant, or had secured consent from one of the parties to the communication and established this fact under the safeguards and conditions hereinafter noted. Such a requirement for a search warrant absent clearly established consent is neither unfair nor impractical. The officer had sufficient time. The interceptions occurred over a four-day span. That they were to be made was decided long before they actually were. The officer conducting the interceptions had an office in the County Courthouse. He could have easily obtained a warrant if he had probable cause for suspecting Petitioner would discuss a particular illegal activity during certain conversations with Davis.
To allow police to indiscriminately place "bugs" on telephones without first obtaining warrants is as much a violation of an individual's rights as to allow officers to arbitrarily enter homes without obtaining prior judicial approval. Time and again, courts have held individuals' rights cannot be sacrificed to enable officers to conduct "fishing expeditions."
It has been said that:
"The incidence of party monitoring or consent to overhearing is substantial and is almost certainly increasing. According to Professor Alan Westin, who has done a great deal of work on wiretapping and eavesdropping and has recently published a book on a variety of threats to privacy, `A conservative estimate would be that more than 10,000 wiretaps and bugs are installed annually by local law-enforcement agencies... .' `"(P)articipant recording,"' says Professor Westin, `in which one participant in a conversation or meeting, either a police officer or a co-operating party, wears a concealed device that records the conversation or broadcasts it to others nearby' is done by law enforcement officers `tens of thousands of times each year.'" 68 Col.L.Rev. 211-212.
We are concerned about such activity. If it is uncontrolled, it has no place in a free state. The right to freely enter into private conversations without fear of having *494 those conversations overheard and recorded is an important one.
We take note of Chapter 934, F.S., enacted as Chapter 69-17 at the 1969 legislative session and particularly Section 934.01(4) thereof, which reads in part:
"(4) To safeguard the privacy of innocent persons, the interception of wire or oral communications when none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction..." (Emphasis added.)
It is our view that this language should not be interpreted to obviate the necessity of a police officer securing a warrant unless one of the parties has given consent which must be shown through proper testimony  not hearsay. "Consents" from police informers with no substantial or requisite interest in the residence or papers or personal effects of a suspect are not legally sufficient to relieve police officers of the necessity of securing search warrants to search the dwelling, person or papers and effects of the suspect; neither should their "consents" except under the safeguards of authentication as hereinafter noted be sufficient to obviate the necessity of securing a warrant for intercepting wire or oral communication.
The quoted language in Section 934.01(4) does not abrogate the rule expressed in Walker v. State, supra, that a participant in a communication must himself take the witness stand and testify that he gave his consent to the interception as a predicate to the introduction of the electronic reproduction of the communication. Its introduction under those circumstances is not violative of the new language in Section 12, Article 1; rather, it is in keeping with the intent of the new verbiage. This is so because it is an elementary rule of evidence that a party to a discussion or communication with a defendant may take the witness stand and testify, subject to cross-examination, as to the contents of his communication or discussion with a defendant and this can include as a logical concomitant to his testimony any tape or electronic recordings of such communications or discussions which he himself made or which he authorized (consented for) police officers to make. Such direct testimony easily falls in the class of those exceptions where establishment of probable cause and securance of a warrant or order are not required.
However, where there is no warrant or no testimony of a participant to the communication that he consented to its interception, the hearsay testimony of the police officer only making the wiretap that he was given consent to make it by an alleged participant to the communication does not obviate the requirements of Section 12, Article I. A denial of constitutional rights cannot be approved by a showing that in all probability the result would have been the same had the proper procedures been followed. Noncompliance with warrant procedures cannot be excused even though those making the search or interception later demonstrate at trial that probable cause in fact existed and that a warrant or order would have been issued had it been requested (Coolidge v. New Hampshire, 1971, 403 U.S. 443, 450-451, 91 S.Ct. 2022, 29 L.Ed.2d 564).
It does not suffice in lieu of a warrant for an intercepting police officer alone to testify by hearsay that consent to intercept had been given him by one of the parties to the communication, any more than a participant in the perpetration of a crime can give consent for police to search the separate residence of his co-participant in which he has no requisite interest, although he could have given information justifying the issuance of a search warrant to make the search.
Davis was alleged by Captain Campbell to be a participant in the intercepted communication. He did not merely provide a "lead" as a confidential informer *495 whose identity could be kept confidential, he was, according to Campbell, a participant in the communication. However, he was not brought forward by the State as a witness or as an affiant in probable cause proceedings to confirm he participated in the communication or that he gave his consent to its interception by Captain Campbell. Analogizing Tollett's situation with those of the accuseds in Spatero v. State, Fla.App.2d, 179 So.2d 873, and Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, it appears that fundamental fairness  at least in view of the new provisions of Section 12, Art. I, Declaration of Rights, Florida Constitution  dictates Davis should have been produced by the State as a witness to afford Tollett opportunity to cross-examine Davis in order to "controvert, explain or amplify" the testimony of Captain Campbell concerning Davis' alleged consent and the State's hearsay claim of what Davis allegedly said in the intercepted communication. 353 U.S. at 64, 77 S.Ct. 623.
Spatero also adopted the holding in People v. Durazo, 52 Cal.2d 354, 340 P.2d 594, where it was held error not to make available to accused an informer who as a material witness presumably might have helped support the defense claim of mistaken identity by impeaching the police officer's identification.
Tollett according to his counsel made a diligent but vain effort to obtain Davis as a witness in his behalf at trial.
If the procedure adopted by the State in this case were approved it would be precedent that the State may bypass a magistrate in the matter of probable cause; that at trial the State may introduce an unwarranted intercepted communication without the presence of the alleged participating informant as a material witness to testify as to his consent to the interception or to confirm the hearsay statements attributed to him in the intercepted communication were his. It eliminates an accused's opportunity to cross-examine the alleged informant and opens the door for admission of hearsay testimony of an alleged participant in a communication who is not produced as a witness. Generally, it furthers the invasion of privacy by the police, encourages wiretapping, entrapment and manufactured evidence.
Captain Campbell was not a participant in the communication between Tollett and Davis. He was an outsider to those private communications, at least insofar as Tollett was concerned. It stands to reason Tollett would not have participated in the conversations with Davis had he known Campbell was making the recording. Under these circumstances, Section 12, Article I requires the prior approval of a magistrate of Campbell's intervention into Tollett's subsequent private conversations with Davis or that this constitutional safeguard of privacy be obviated by the fact Davis, a participant in the conversation, testified he gave Campbell consent to make the wiretap.
True, after-the-fact justification of the unwarranted interceptions was attempted. But it, too, was grossly deficient. Davis, though listed as a witness by the State, was not brought forward by the State to testify he gave Campbell his consent to make the wiretap. Tollett had no opportunity to cross-examine Davis. Campbell testified he had Davis' consent but, as Judge Rawls points out in his dissent in the District Court (244 So.2d pp. 461, 462 and 463), Campbell's testimony concerning the alleged consent was replete with hearsay statements of what he alleged Davis said to him. Judge Rawls denotes most cogently how Tollett was denied trial fairness and constitutional safeguards in the introduction of the reproduced communication.
The object of the new language in Section 12, Article I is to insure that before a wiretap is made a judicial officer will determine whether there is probable cause to make the tap. A citizen's privacy is supposed *496 to be protected to the extent of having a magistrate determine in advance whether his private conversations should be "bugged" by the police because of suspected criminality. Captain Campbell did not take the trouble to have a judge determine in advance whether there was justification for the wiretap. He went ahead and made the "tap" without prior judicial approval. This is a circumvention of a citizen's right guaranteed by Section 12, Article I, and cannot be sanctioned.
We also conclude that where wiretaps are made without the advance securance of permission of a magistrate, authentication of the giving of consent to the police to make the wiretap must be established by competent and relevant testimony of a party to the communication, subject to cross-examination by defendant, as a condition precedent to the introduction of the wiretap recording of the communication in evidence against the defendant. We believe that the new language in Section 12 of Article I of the State Constitution to be meaningful requires the safeguards set forth in this opinion.
The decision of the District Court is quashed and the cause remanded for a new trial not inconsistent with this opinion.
CARLTON, C.J., and ROBERTS and McCAIN, JJ., concur.
ADKINS, J., dissents with opinion.
BOYD and DEKLE, JJ., dissent and agree with ADKINS, J.
ADKINS, Justice (dissenting):
I respectfully dissent as this Court does not have jurisdiction.
The majority opinion states that there is conflict between Tollett v. State, 244 So.2d 458 (Fla.App.1st, 1971) and Walker v. State, 222 So.2d 760 (Fla.App.3d, 1969).
In Walker v. State, supra, an employee of an armored service agreed to permit a defendant to rob him and to divide the proceeds. The employee informed the police of the plan and gave the police consent to attach a wiretap to his telephone. They recorded the employee's conversations with the defendant and such recordings were admissible in evidence in a robbery prosecution. From the opinion, it appears that Matthews, the employee, testified at the trial. The Court in its opinion said:
"Turning to the recordings of the phone conversations, we find the law appears clear and well-settled as to the prerequisites which govern the admissibility of the recordings made by the use of a wire tap on a telephone. Here, Matthews gave his consent to the police authorities to attach the wire tap to his telephone. Once that consent has been obtained, recordings made by police authorities pursuant thereto are admissible in evidence." (p. 763)
In Tollett v. State, supra, the tape recording of a telephone conversation between an informer and an accused was held admissible at the defendant's trial as the monitoring and recording was with the express or implied consent of the informer. In other words, the District Courts of Appeal in Walker v. State, supra, and Tollett v. State, supra, held that the recording was admissible if made with the consent of one of the participants. It was only in the case sub judice that the question of hearsay was discussed.
In the Walker case, the Court referred to Hajdu v. State, 189 So.2d 230 (Fla.App.3d, 1966), a prosecution for unlawful practice of medicine, where Claire White, a private detective, visited the defendant with a radio transmitter secreted in her purse and engaged him in conversation. Another detective [Behrens] was stationed *497 outside defendant's home listening to the conversation over a radio receiver. Behrens was improperly permitted to testify to the conversation he had heard broadcast from the secret transmitter to his receiver. The defendant was in his home at the time of the conversation with White. The alleged conversation was never transcribed.
In the Hajdu case, the Court said that the entry into the private premises by the paid private investigator amounted to a trespass. The Court referred to the case of Gomien v. State, 172 So.2d 511 (Fla.App.3d, 1965), where a witness testified concerning a conversation which was recorded by him after being invited into the defendant's premises. The Court in Hajdu v. State, supra, explained that the principles in Gomien v. State, supra, were not applicable. The Court pointed out that if the investigator who entered the home "had recorded the conversation, then upon proper authentication [if otherwise admissible] any such transcription would have been admissible." In the case sub judice there was no trespass and the conversation was recorded.
None of these cases are in conflict. The majority opinion merely adds another qualification to the admissibility of recorded statements in holding that consent cannot be established by the testimony of the officer alone; it must be corroborated by the testimony of an informer. During these times when police officers are unjustly castigated by so many misguided citizens, I think it extremely inappropriate to say that the testimony of an officer relating to consent cannot even be considered by a jury unless corroborated by an informer. This has not been the law in the past and the people certainly did not intend this result when the Constitution was adopted in 1968.
The question of consent is a factual question and we should not place additional strings upon the determination of such a question.
BOYD and DEKLE, JJ., concur.
NOTES
[1] The District Court refers to Campbell as "Lieutenant," but the record describes him as "Captain."