367 So.2d 601 (1978)
Louis ZUPPARDI, Angelo Castello and Guy Zona, Appellants,
v.
STATE of Florida, Appellee.
No. 51248.
Supreme Court of Florida.
October 26, 1978.
Rehearing Denied March 7, 1979.
*602 Loyd C. Mosley, Clearwater, for appellants.
Robert L. Shevin, Atty. Gen., and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
ENGLAND, Chief Justice.
Appellants in this proceeding challenge the constitutionality of Florida's "bookmaking" statute, Section 849.25(1), Florida Statutes (1975), on the ground that it violates due process because of vagueness and overbreadth.[1]
The facts are not in controversy. While on assignment to uncover illicit gambling operations, three special investigators learned from confidential informants that appellant Zona was taking bets on football games from members of a country club in Pinellas County and was receiving "point spread" information over a pay telephone at the club. Another informant related that Zona gave club members his unlisted telephone number and the number of appellant Zuppardi for the purpose of placing bets in his absence. Callers to these numbers were instructed to ask for a "writer" identified only as "Tony." One undercover agent personally monitored a call made by an informant during which the informant gave a code and in response heard a male voice identify himself as "Tony," furnish the requested point spread information, and advise the informant that Zona was accepting bets at the club.
The undercover officers were unable to contact Zona directly at the club because only members were admitted and the informants refused to introduce them into the club for fear of reprisals if they were identified. To overcome this problem, the officers applied for and received orders authorizing a wiretap of Zuppardi's and Zona's telephones. When they later learned that Zona sought approval from appellant Castello before accepting large wagers and that both Zona and Zuppardi reported each day's betting transactions to Castello, another wiretap permit was acquired for Castello's telephone. Based on the totality of information obtained during the investigation, search warrants for the three residences *603 were duly obtained and various gambling paraphernalia was seized. Informations were subsequently filed, charging the appellants with bookmaking.
Appellants moved to dismiss the charges against them, alleging that the "bookmaking" statute is unconstitutionally vague and overbroad. They also moved to suppress the intercepted communications, on grounds of non-compliance with Section 934.09(1)(c), Florida Statutes (1975), and to compel disclosure of one confidential informant's identity in order to establish whether the state had obtained consent to the first intercepted communication as required by Section 934.03(2)(c), Florida Statutes (1975). All motions were denied by the trial court, and after appellants changed their original not guilty pleas to no contest pleas, the trial court adjudged them guilty and imposed sentences.[2]
1. The trial judge properly held that the bookmaking statute is neither vague nor overbroad. Section 849.25(1) provides:
As used in this section, the term "bookmaking" shall be deemed to be the taking or receiving of any bet or wager upon the result of any trial or contest of skill, speed, power, or endurance of man, beast, fowl or motor vehicle.
Relying entirely on cases from other jurisdictions,[3] appellants argue as to vagueness that the common and ordinary meaning of "bookmaking" connotes some writing or recording of bets in a book, so that the statute fails to give fair notice that criminal penalties may be imposed for "oral" as well as recorded bet-taking. Based on the same connotation of "recorded" bookmaking, they argue as to overbreadth that the statute outlaws conduct which is otherwise lawful, namely oral bet-taking.[4]
We reject appellants' view of Section 849.25(1). The statute is sufficiently clear in its terms, and adequately confined in its reach, to withstand due process scrutiny. The statute meets the controlling standards for overcoming vagueness which are set out in Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), in that persons of ordinary intelligence in contemporary Florida[5] could not reasonably conclude that unwritten bet-taking does not violate a law which prohibits "book"-making. Appellants' overbreadth challenge, which rests on the premise that a writing or recording of wagers is indispensible, necessarily fails as well.[6]
2. Appellants argue that the wiretap affidavit furnished by undercover officials[7] did not include a "full and complete statement" that other investigative procedures had been tried or appeared unlikely to succeed, as required by Section 934.09(1)(c), Florida Statutes (1975).[8] This challenge is *604 focused on paragraph 7 of each affidavit,[9] which states:
The normal investigation procedures have been tried by your Above named Affiants in that information has been gained from reliable and trustworthy Confidential Informants and other law enforcement agencies; surveillances have been repeadly [sic] attempted on the aforesaid participants without success because of their guile, organized manner of operation, fear of apprehension from illegal gambling and bookmaking activities, and the fact that the aforesaid GUY A. ZONA is known by your affiants to only conduct illegal gambling and bookmaking with club members of the Countryside Country Club and with no other person who your Affiants have been able to identify and interview. All of the listed confidential Informants have stated that they are unable to introduce a law enforcement officer into the operation of GUY A. ZONA because of ZONA'S method of dealing with only club members from the Countryside Country Club and the established use of codes when conducting gambling and bookmaking activity over the telephone. Further, contact with the above Confidential Informants indicate [sic] that use of law enforcement officers or other Confidential Informants might cause physical danger to the persons involved as well as prematurely disclosing the instant investigation so as to enable GUY A. ZONA, TONY LAST NAME UNKNOWN, and their confederates to elude apprehension and arrest for their illegal activities in violation of the laws of the state of Florida.
Appellants complain that this recitation sets out no factual predicate which would enable a court to determine why normal investigative procedures would be unsuccessful, except for general statements which characteristically apply in every bookmaking case. They also claim that the affidavit itself recognized an alternative investigative method which the state should have been required to pursue before it obtained a wiretap authorization  that is, acquisition of a club membership in order to deal directly with the suspected bookmakers.[10]
As to the factual predicate for the affidavit, we agree with appellants that a statement of the underlying circumstances is essential[11] and that a mere "boilerplate recitation of the difficulties of gathering usable evidence in bookmaking prosecutions is not a sufficient basis for granting a wiretap order."[12] The sufficiency of an affidavit must be tested by reference to the affidavit as a whole, however, and not merely "bits and pieces read in isolation."[13]
These affidavits go beyond a mere boilerplate recitation of investigatory difficulties; they explain that the suspects were known to deal exclusively with club members, that they communicated only through codes, and that all available informants were unable or unwilling to assist law enforcement personnel in establishing direct contact with the suspects due to fear of physical danger. These recitations constitute a sufficient factual predicate on which the magistrate could properly have concluded that the requirements of Section 934.09(1)(c) were satisfied, and that normal investigative procedures were not reasonably likely to succeed.
*605 As to the state's alleged failure to pursue the alternative investigative technique of obtaining a membership to the club, paragraph 7 of the affidavit also adequately explains that this alternative was discarded to avoid endangering the physical safety of the persons involved. In addition, the affidavit reasonably suggests why that alternative might have prematurely disclosed to the appellants that an investigation was under way. Perhaps bare allegations of a concern for safety or for premature disclosure of an investigation might not suffice in all circumstances, but the totality of the allegations here are sufficient to justify the magistrate's conclusion that the potential for harm was real and that, under Section 934.09(3)(c), alternate procedures "reasonably appear ... to be too dangerous."[14]
Obviously, the interception of private communications should not be permitted as a routine method of criminal investigation where more conventional techniques may be successfully employed, but neither should law enforcement officials be compelled to endanger themselves and their informants before wiretaps are made available. The legislature has expressly recognized that
[t]he interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensible aid to law enforcement and the administration of justice.[15]
Adherence to the strict statutory procedures prescribed in Section 934.09, as occurred here, accommodates both the needs of law enforcement officials and the legislature's asserted objective simultaneously "to protect effectively the privacy of ... communications."[16] Considering the totality of facts and circumstances embodied in the application and affidavits presented to the issuing magistrate, we cannot say that he acted unreasonably in authorizing the requested wiretaps.
3. Appellants cite Tollett v. State, 272 So.2d 490 (Fla. 1973), to support their contention that the confidential informant who allegedly agreed to the state's initial eavesdropping should have been identified and produced for cross-examination as to whether consent was freely given, as required by Section 934.03(2)(c), Florida Statutes (1975). That statute provides:
It is lawful under this chapter for a law enforcement officer ... to intercept a wire or oral communication when ... one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.
In Tollett, we held that for the purposes of introducing a wiretap recording into evidence at trial, in the absence of an authorization order, it "does not suffice ... for an intercepting police officer alone to testify by hearsay that consent to intercept had been given him by one of the parties to the communication."[17]
It is manifest that Tollett is factually distinguishable from the present case in two respects  the intercepted communication here was not taped, and its contents were never offered into evidence at any trial. In effect, appellants urge us to extend the Tollett decision to require that the state prove consent even when the product of the eavesdropping is used solely in an affidavit to establish probable cause. We decline to so broaden the rule.
We have previously held that "information forming the basis for a search warrant is not to be measured by its admissibility as evidence in the trial of the case," Treverrow v. State, 194 So.2d 250, 252 (Fla. 1967), and *606 we are persuaded that the more lenient standard is equally applicable to a wiretap authorization order. We now hold that when information acquired through the interception of communications under the procedure authorized by Section 934.03(2)(c) is used only to establish probable cause, the state need not establish consent through the direct testimony of the consenting party. It follows that the trial judge did not err in denying appellants' motion to disclose the identity of the confidential informant and to produce him for cross-examination by the defense on the issue of consent.
In accordance with the foregoing analysis, the orders entered below upholding the constitutionality of the bookmaking statute and denying appellants' motions are approved, and the convictions appealed from are in all respects affirmed. These cases are remanded to the trial court for proceedings not inconsistent with this opinion.
It is so ordered.
ADKINS, BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
HATCHETT, J., concurs in part and dissents in part with an opinion.
HATCHETT, Justice, concurring in part, dissenting in part.
I agree with the majority that the bookmaking statute is constitutional. State v. Barnett, 366 So.2d 411 (Fla. 1978). I would remand the case to the trial court for a finding by the trial judge as to whether consent was given by the informant as required by Florida Statute 934.03(2)(c), because any interception of a wire or oral communication is unlawful without the required consent.
NOTES
[1] Appellants pled no contest to charges brought against them in the circuit court and specifically reserved their right to appeal this constitutional issue, together with certain other rulings by the trial court, under State v. Ashby, 245 So.2d 225 (Fla. 1971). Appeal was originally taken to the Second District Court of Appeal, which transferred the case here on motion of the state. See Art. V, §§ 2(a) and 3(b)(1), Fla. Const.; Fla.App.R. 2.1, subd. a(5)(d).
[2] Zona and Castello were sentenced to concurrent terms of six months to three years imprisonment. Zuppardi received three years probation, conditioned on his serving 60 days in the county jail.
[3] The principal cases cited by appellants are New York v. Bennett, 113 F. 515 (S.D.N.Y. 1902); State v. Austin, 142 La. 384, 76 So. 809 (1917); State v. Morano, 134 N.J.L. 295, 47 A.2d 419 (1946); People ex rel. Lichtenstein v. Langan, 196 N.Y. 260, 89 N.E. 921 (1909); People ex rel. Jones v. Langan, 132 App.Div. 393, 116 N.Y.S. 718, aff'd, 196 N.Y. 551, 90 N.E. 1164 (1909).
[4] There is no merit whatsoever in appellants' general assertion that the absence of a writing requirement violates the principle of law which requires criminal statutes to be definite.
[5] We note that all of the decisions on which appellants rely were rendered over sixty years ago, except for one thirty-year-old New Jersey decision. See note 3 above.
[6] The taking of bets, whether written or oral, is by no means a constitutionally protected activity. See State v. Bales, 343 So.2d 9 (Fla. 1977).
[7] Appellants' complaint on appeal that the state failed to file for the record the originals of the affidavits and wiretap orders is barred by their stipulation to the use of copies in the trial court and their failure to request the trial court to compel production of the originals.
[8] "Each application for an order authorizing or approving the interception of a wire or oral communication ... shall include...

(c) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."
[9] Although the supporting affidavits for the three wiretap orders did not contain identical language (for example, paragraph 7 of the third affidavit was substantially more detailed than the second, which in turn was more detailed than the first), they were sufficiently similar that a finding of adequacy as to the first (and least detailed) affidavit would necessarily mean that the others pass muster.
[10] Paragraph 4 of the affidavit recited that the affiant had actually obtained from the club's secretary an application form for admission to the club.
[11] See, e.g., United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
[12] United States v. Kerrigan, 514 F.2d 35, 38 (9th Cir.1975). It is noteworthy, however, that the court in Kerrigan went on to sustain the validity of the affidavit, adding that "the law does not require that a wiretap be used only as a last resort." Id.
[13] Rodriguez v. State, 297 So.2d 15, 17 (Fla. 1974).
[14] § 934.09(3)(c), Fla. Stat. (1975). The affidavit alleged a significant financial operation, which would bolster safety concerns. It stated that a reliable informant "had observed Guy Zona accepting up to $15,000.00 in bets on football games from club members ... in one evening's activity," and had seen him "write at least $24,000 in football bets during one evening."
[15] § 934.01(3), Fla. Stat. (1975).
[16] § 934.01(2), Fla. Stat. (1975).
[17] 272 So.2d at 494.