418 So.2d 1118 (1982)
Clarence Albert ZACKE, Appellant,
v.
STATE of Florida, Appellee.
No. 81-859.
District Court of Appeal of Florida, Fifth District.
August 11, 1982.
Rehearing Denied September 3, 1982.
*1119 Joe M. Mitchell, Jr., and H.S. Henderson, III, Melbourne, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and C. Michael Barnette, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The defendant/appellant, Clarence Albert Zacke, was charged with and convicted of solicitation to commit first-degree murder and conspiracy to commit murder. Zacke raises twelve points on appeal. We find no merit in, nor necessity to discuss, any of these points other than Points X and XI.
The underlying facts, as indicated by the state's evidence, show that Zacke attempted to procure the murder of one Kenneth Merrithew, a key witness in a pending drug case against Zacke. At trial one Gregg Bacon testified that he was approached by Richard Lee Hunt, the alleged co-conspirator and solicitee, in September, 1980, and offered the contract for a hit to be carried out. Bacon then went to law enforcement officials with the plan, and they subsequently contacted Hunt to obtain his cooperation in making a case against Zacke.
Detective Rheuben McGee, of the Melbourne Police Department, testified that he met with Hunt after he had been informed of the offer made by Hunt to Bacon. McGee offered Hunt a chance to avoid criminal charges by cooperating with the police. McGee testified that he instructed Hunt to set up a meeting with Zacke and obtained Hunt's written consent for the placing of an electronic listening device on his person. Following McGee's instructions, Hunt met with Zacke at the home of one Roger Williams on September 19, 1980, and again on September 22, 1980, the latter time in Zacke's truck in a parking lot. Both these meetings were taped. McGee testified *1120 he gave instructions to Hunt as to when the meetings were to occur and that his prime function was to get any statements incriminating Zacke for the solicitation and conspiracy charge, but that he did not preclude Hunt getting information on Zacke's drug charges.
Roger Williams testified that he initially talked to Zacke in May or June of 1980, at which time Zacke was looking for someone who could "break fingers." Williams attempted to get in touch with a known enforcer, but that attempt failed. On September 14, Williams testified that Zacke called him, telling him that he had witness problems once again. Hunt happened to be present at Williams' house at the time of the phone call and Williams told Zacke that Hunt had similar problems, and knew people who could take care of them. He then testified he informed Hunt that Zacke wanted to talk to Hunt about what people he knew. Later that day, Zacke and Hunt met at Williams' home. Williams testified that they discussed different methods of enforcement, with Zacke saying, "I don't want bones broken, I want to make an example of this guy." Hunt replied, "Okay," and Zacke then said he wanted the witness dead. Hunt's reply to this was, "No problem, I can handle it." Williams further testified that Zacke identified the victim as a pilot who was supposed to fly some pot for him and who was going to testify. The meeting ended with mutual promises to stay in touch between Zacke and Hunt.
A subsequent meeting was set up for September 19, 1980, at which meeting Hunt was wearing a "body bug." The jurors, listening to the tape at trial, heard Hunt and Zacke agree on a $5,000 price tag for the murder, and heard Zacke give a complete description of where Merrithew could be found and the kind of car he drove, as well as his name, which Zacke clearly spelled out for Hunt. Zacke said he wanted to read about the murder in the headlines, and that he did not have much concern if Merrithew's children were killed as well. A tape of the September 22 meeting was also played for the jury. At that meeting, Hunt told Zacke the job was done, and he wished to collect.
Hunt, who was scheduled to testify against Zacke at his trial in April, 1981, is missing and presumed dead. Evidence proffered outside the jury's presence indicated Hunt's unavailability as a witness was procured by the defendant. The evidence that Hunt's disappearance was due to Zacke having had him killed was:
(A) One David Russell Burton testified that on February 2, 1981, he met with Zacke in a car outside a Melbourne restaurant, at which time the latter was nervous and tense. Zacke said he had taken care of some business the preceding Thursday (January 29). In response to a question by the prosecutor as to Zacke's specific statement, Burton's response was: "Something entailed that he had taken care of a witness against him ... and then he had to drop a car off at Roger's place." Roger was identified as Roger McLaughlin, the operator of an automobile junk business in Kissimmee, Florida. Zacke said he had paid a "key of cocaine" for the job.
(B) Roger McLaughlin confirmed that Zacke had left a 1975 Toyota Celica with him with instructions to demolish it completely. McLaughlin's girlfriend corroborated Zacke's delivery of the Toyota to the junkyard.
(C) The state adduced credible evidence that the Toyota Celica belonged to Hunt and that Hunt had not been seen by any friends or associates since January 28, 1981, and that the state had been unable to find him for trial.
(D) One Stephen Bailey testified that he had been an inmate in the Brevard County Jail on February 2, 1981, at which time he first met Zacke as a cellmate. Zacke told Bailey that he had hired Hunt to get rid of an airplane pilot, but then Hunt had gone to the police. This resulted in Zacke going to a man named Clark. Bailey testified: "So, the conversation with William Chansey Clark was about getting rid of Dicky Hunt. Mr. Zacke said that he, at the meeting, that he had, told Mr. Clark that it wouldn't hurt *1121 his feelings any at all if Dicky Hunt was gotten out of the picture; that Mr. Clark said that he would take care of it if Zacke could supply an automatic pistol with a silencer." After several more meetings, Zacke told Clark not to go ahead with it.
Bailey further testified from his jail cell conversations with Zacke that "the man he had eventually hired to get rid of Dicky Hunt had insisted that he drive the car from Tampa to the junkyard." Zacke expressed concern that the police would trace the Toyota and find that he had driven it to McLaughlin's junkyard. He had instructed McLaughlin to burn the Toyota and pour battery acid over it, paying particular attention to identifying marks and numbers, and then to crush the car. Zacke said he wasn't concerned about Hunt's body being found, and that he had been able to hire Hunt's killer at a cheaper price than he usually received because of Zacke's long association with him.
The appellant's first point on appeal which we consider is the assertion that the trial court erred in refusing to suppress the taped conversation between the defendant Clarence Albert Zacke and then government agent Richard Lee Hunt which were obtained in violation of the defendant appellant's Article I, Section 12, rights under the Florida Constitution.[1] In this regard, appellant argues that this provision affords greater protection to individual defendants against electronic interception of communications for evidentiary purposes than any such protection afforded by federal guidelines, constitutional or statutory. He cites the landmark case of State v. Sarmiento, 397 So.2d 643 (Fla. 1981), holding section 934.03(2)(c), Florida Statutes (1977)[2] unconstitutional "insofar as that statute authorizes the warrantless interception of a private conversation conducted in the home... ."
Appellant acknowledges that Sarmiento dealt expressly with a warrantless interception in a defendant's home, but argues that its application should be extended to the home of a defendant's friend (i.e., Williams) and the defendant's truck. The argument is that in such places there is a reasonable expectation of privacy in the intercepted communication, and that this approach is supported by the rationale of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Katz analysis was specifically adopted by the Florida Supreme Court. Sarmiento, 397 So.2d at 645.
Subsequently, a series of district court of appeal opinions have limited application of Sarmiento to the home of a defendant. See Ruiz v. State, 416 So.2d 32 (Fla. 5th DCA 1982) (Sarmiento not applicable to conversation in a parking lot); Miller v. State, 411 So.2d 944 (Fla. 4th DCA 1982); Hurst v. State, 409 So.2d 1059 (Fla. 1st DCA 1982) (body bug used by undercover agent in defendant's pick-up truck produced admissible evidence); Morningstar v. State, 405 So.2d 778 (Fla. 4th DCA 1981) (not applicable in home of co-defendant); Padgett v. State, 404 So.2d 151 (Fla. 1st DCA 1981) (Sarmiento inapplicable to motel room); Pittman v. State, 397 So.2d 1205 (Fla. 1st DCA 1981), review denied, 407 So.2d 1105 (Fla. 1981) (Sarmiento not controlling when conversations took place in a restaurant, an outdoor rural setting and the defendant's truck).
*1122 Now the Florida Supreme Court has answered this question and agreed with the limitation of the Sarmiento case which had been adopted by the district court of appeal cases cited above. Hill v. State, ___ So.2d ___ (Fla. 1982) [7 FLW 324]. In Hill the majority opinion states:
The instant case is ... distinguishable from Sarmiento because the instant tape recording was of a conversation which occurred in appellant's back yard, not in the home. We refuse to extend the reasoning in Sarmiento and the protections of article I, section 12, beyond the four walls of the home... .
See also K.W. Munroe, Consensual Electronic Surveillance and the Explosive Impact of Sarmiento, 56 Fla. B.J. 355 (April 1982).
We also note that the argument in regard to suppression of the tapes based on an expectation of privacy is applicable only to the conviction of solicitation, not to the conviction of conspiracy. In regard to the latter, the conspiracy was charged through September 18, which period preceded the tapes, and it was supported by the trial testimony of Roger Williams relating the conversation of September 14, 1980, among Williams, Hunt and Zacke. The trial court specifically instructed the jury as to the dates covering the conspiracy count, which precluded the dates of the taped conversations. There was no objection at trial to the failure of the court to give a specific cautionary instruction concerning the tapes, hence this point was not preserved for appeal.
The other point on appeal which merits discussion is the trial court's admission into evidence of the tapes in regard to the solicitation count in the absence of a showing at trial of Hunt's consent, subject to cross-examination.
Appellant contends that the presence of a consent form, as here, even with the witness' attestation as to the voluntariness of consent, is still insufficient to allow for admission of the tapes, relying on Tollett v. State, 272 So.2d 490 (Fla. 1973), and Lopez v. State, 372 So.2d 1136 (Fla. 2d DCA 1979). The state relies on State v. Leonard, 376 So.2d 427 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1115 (Fla. 1980), which allowed tapes in with only a consent form and attesting witnesses when the informant was killed in a police shootout prior to the trial.
In Tollett, the Supreme Court held that wiretap evidence could not be allowed to be presented without an establishment of consent by competent and relevant testimony of a party to the communication, subject to cross-examination. There was no consent form in Tollett as in the instant case; rather, the only showing of consent was the testimony by police officers that the consent was freely given. The informant in that case was unavailable for trial.
In Lopez, tapes were allowed in by the trial court, but the district court reversed, holding that under Tollett cross-examination of a party to the communication as to his alleged consent was required, even when a consent form was present. While Lopez would seem to preclude the admission of the tapes here on the consent issue, Lopez is factually distinguishable in that the alleged consentor had given the defense counsel a sworn statement stating that he and the appellant took narcotics immediately before and during the time the tapes were made, and his continued cooperation with police was due to coercion. He denied ever having been at the site of the taping during the hearing on the motion to suppress, and refused to testify at the trial itself. The involuntariness issue was so clearly presented in Lopez as to vitiate any consent based upon the consent form, leaving only the statements of the police officers themselves to support the claim.
In Leonard, the informant who signed the consent form was killed in a police shootout prior to trial. The trial court granted the motion to suppress the tapes, but the Third District reversed, holding that the consent form and its authentication by the witnesses was sufficient to allow the tapes in. The court reconciled Tollett by stating that in Tollett the court's concern was to prevent hearsay, an issue not arising in Leonard due to the general *1123 exception to hearsay when a witness is dead and his out-of-court statement is the only possible proof.
We do not perceive a conflict between Leonard and Lopez. The instant case is governed by the Leonard rationale rather than that of Lopez. Here there is no issue of voluntariness raised in executing the consent, as in Lopez. Moreover, the absence and presumed death of the consenting witness at trial here were shown by substantial, not to say overwhelming, evidence to have been procured by the defendant/appellant, whereas in Leonard the death of the witness was due merely to misfortune.
Accordingly, the convictions are
AFFIRMED.
DAUKSCH and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] Said provision reads:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence. (Emphasis added).
[2] Said section reads:

It is lawful under this chapter for a law enforcement officer or a person acting under the direction of a law enforcement officer to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.