# STATE OF FLORIDA v. ENRIQUEZ, et al.

## Case No. 82-11333

Eleventh Judicial Circuit, Dade County

October 24, 1983

## APPEARANCES OF COUNSEL

**William Berk** for plaintiff.

**Edward Shohat** for defendant.

## OPINION OF THE COURT

THOMAS M. CARNEY, Acting Circuit Judge.

## ORDER ON MOTIONS TO SUPPRESS

The Defendants seek to have evidence gathered by means of electronic surveillance suppressed. The Court has reviewed the legal memoranda, the testimony at the hearing, the applications for warrants, the transcripts of the intercepted calls on warrants, and the applicable law.

## STANDING

All Defendants contend they have standing to contest the legality of the series of interlocking taps that comprise the challenged evidence.

In sequence, the taps began by the police record warrantless consent calls between one Marvin McAdams and a suspected narcotics trafficker Frank Barber. The taps that follow are interlocking in the sense that the Barber taps provided the police with probable cause for warrants on the taps that followed.

All of the Defendants were not parties to each conversation recorded. Likewise all Defendants were not recorded at their own premises in each instance.

The first issue for this Court is whether a Defendant not overheard on a tap has standing to contest it because the tap provides police with probable cause to obtain later taps in which he is overheard and that are damaging to that Defendant.

Only those Defendants whose conversations were overheard are "aggrieved persons" with standing to challenge that tap. *Alderman v. U.S.*, 89 S. Ct. 961 (1969). This rule has been adopted in Florida. Here it has been held that a Defendants personal rights are only violated when he has himself been overheard or when the conversation occurs on his premises. *State v. Albano*, 394 So.2d 1026 (Fla. 2d DCA 1981).

In a case similar factually to the one at bar, the Defendants challenging a second wiretap in which they were implicated in crimes were held to be without standing because an illegally obtained first tap, which was used for probable cause to support the second, did not implicate them. They simply were not "aggrieved parties" under the applicable Federal electronic surveillance statute. *U.S. v. Scasino*, 513 F.2d 47 (5th Cir. 1975).

Accordingly, only those Defendants who were overheard or if the conversation occurred on their premises may challenge that tap.

Based on these considerations, the Court makes the following findings of fact as to standing.

71

## THE BARBER TAP

1. The Defendant Fernando Enriquez alone has standing.

## THE LUIS VASQUEZ BUSINESS TAP

2. The following Defendants alone have standing;

> Angel E. Alvarez
> Raymond Baszner
> Jorge Casanova
> Alberto DeLeon
> Fernando Enriquez
> Sergio Gonzalez
> Maurice Steen
> Luis Fernando Vasquez

## THE LUIS VASQUEZ RESIDENCE TAP

3. The following Defendants alone have standing;

> Maurice Steen
> Bobby
> Sergio Gonzalez
> Fernando Enriquez
> Roberto DeLeon
> Alberto J. Cordero
> Jorge Casanova
> Raymond Baszner
> Angel E. Alvarez
> Luis Fernando Vasquez

## RECORDED TAPS PRIOR TO THE FIRST SURVEILLANCE WARRANT

The original recorded Barber and McAdams telephone conversations that gave rise to the issuance of the Barber Tap Warrant were themselves obtained without a warrant. The Defendants urge that a warrant was necessary and that the recordings were illegal, making suppression of all that flowed from them a requirement. It is true that *State v. Sarmiento*, 397 So.2d 643 (Fla. 1981) obligates police to obtain a warrant where they seek to overhear conversations conducted in a home. It is also true that the calls were made to Barber's home. The flaw in the Defendants position is that the home in question belongs to Barber. No telephone conversations were recorded during this pre-warrant period that emanated from the home of any Defendant in the case at bar.

The position taken by Defendant Enriquez that since he is implicated

on the Barber tap, he is entitled to challenge the prior tap on which he is not implicated is thoroughly wrong as the Court understands the cases previously analyzed.

Defendants also raise the constitutionality of Chapter 934, the degree of prior surveillance disclosure, exhaustion of investigative techniques, minimization of intrusion and other issues. But, before passing on those issues the Court will first determine the issue of probable cause to authorize the intercept telecommunications warrants.

## PROBABLE CAUSE

The sufficiency of an affidavit in support of an application to intercept telecommunications must be determined from bits and pieces read in isolation. *Zuppardi v. State*, 367 So.2d 601 (Fla. 1978). It is tested in common sense and realistic fashion. *Amerson v. State*, 388 So.2d 1387 (Fla. 1st DCA 1980). In reviewing a magistrates determination of probable cause, such finding must stand in the absence of arbitrariness.

The basis for probable cause in this case comes from three areas; the intercepted calls and the two confidential informants. The Court finds therefore, that Judge Scott did not act arbitrarily in determining probable cause to issue the warrants in question.

There is little doubt that the intercepted calls in the transcripts do not suggest definite criminal activity. Even though suspicious, they are not enough. The Court will consider them, however, in conjunction with the information given by informants "A" and "B".

Under *Aquilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509 (1964), and *Spinelli v. U.S.*, 393 U.S. 410, 98 S.Ct. 584 (1969), informants "A" and "B" had to pass a two-pronged test in order for the police to legally use their information. In short, they must show some of the underlying circumstances from which it can be determined that their information is reliable and supply some information from which the police can conclude that they themselves are reliable. As to informant "A", the Court makes the following findings of fact;

1. "A" stated he was a member of the Alvarez drug organization; engaged in the smuggling of narcotics.

2. He described geographically how a drug smuggling organization is coordinated between the U.S., Colombia and the Bahamas.

3. He accurately informed police as to several meetings between alleged drug kingpins.

4. He gave police accurate information about a shipment of cocaine in

**73**

the spring of 1981, when police witnessed the landing of a plane and followed a van to a house in Miami, where 829 pounds of cocaine was seized.

5. Subsequent to that seizure "A" was unable to obtain any further information.

Based on the information supplied by informant "A", this Court finds that he satisfied that *Aquilar* test of reliability. As an insider in the alleged drug conspiracy it can be assumed that "A" was in a position to provide police with accurate information. The Court also finds "A" himself has proven to be a reliable individual. His information directly led to a seizure by the police of a large quantity of cocaine. He also detailed various meetings between alleged drug conspirators, which were independently corroborated by police investigation.

What "A" has done is establish the existence of an ongoing drug conspiracy among members of the Luis Vasquez organization. However, he failed to allege that the phones were being used in furtherance of these activities.

The State also relies on another confidential informant named "B" in an effort to establish probable cause. This Court makes the following findings of fact as to information supplied by "B";

1. "B" is a member of the Luis Vasquez drug organization.

2. He provided police with specific telephone numbers; (a) 305 444 4791, (b) 305 444 4799, which he states are being used in furtherance of drug-related activity.

3. He described the manner in which narcotics are smuggled into this country as well as the method of operation used by this particular operation.

4. Police were provided with an updated narcotics hotline by "B", which he was instructed to use to make drug-related calls.

5. "B" supplied police with information concerning meetings between conspirators, during which the importation of 500 pounds of "coke" was discussed.

Based on the foregoing, this Court concludes that "B" also passes the *Aquilar* test of reliability. His information was obtained in a reliable manner in that he alleges to be a member of the Luis Vasquez organization. Also by providing police with information in the past which led to the seizure of narcotics, police have reasonably determined that "B" is a reliable individual. Also, "B" has provided

74

information that "A" was lacking, to wit; that specific telephone lines are being used in furtherance of this drug activity.

This Court also finds persuasive the language in *United States v. Hyde*, 574 F.2d 856 (5th Cir. 1978) which says that when two separate confidential informants provide independent yet mutually corroborating information, this will weigh heavily in the ultimate determination of probable cause.

To restate briefly, "A" alleges that a large drug conspiracy exists, and his information leads to a seizure of a large quantity of cocaine. "A" names several individuals whom he claims are key individuals in this organization. Independent police investigation revealed that these individuals meet together on a regular basis. "B", a completely independent source, substantially corroborates "A"'s story and further alleges that he has been given a specific phone number through which he is to make drug calls. Police investigation shows that the telephone numbers supplied by "B" are registered to Vendom Export, one of whose chief officers is Luis Vasquez. Viewed in its totality, this Court finds that probable cause does exist once these independent facts are put together. These affidavits allege facts from which it can be reasonably believed that the parties whose communications are sought to be intercepted are about to commit an offense and that information intercepted will reveal evidence relating to that offense. Compare *Amerson v. State.* supra.

This Court is aware of the June United States Supreme Court decision of *Gates v. Illinois* reported recently. In *Gates*, the Court relaxed the strict requirements concerning probable cause furnished by informants. The strict requirements of *Aquilar-Spinelli* are no longer the standard for determining an informant's reliability. Now an issuing magistrate is to read the affidavit in common sense fashion looking at the "totality" of the circumstances. In the case at hand, *Aquilar-Spinelli*, was the standard at the time of issuance of the wiretap order. *Gates* was handed down subsequent to the motion to suppress but prior to this Court's decision. Assuming arguendo that *Gates* applies, compare *State v. Jennings*, 396 So.2d 1231 (Fla. 4th DCA 1981), the Court's decision in this case would stand as *Gates* would, a fortiori, support a finding of probable cause.

## CHAPTER 934—CONSTITUTIONALITY

Chapter 934 of the Florida Statutes allows police to conduct intrusive investigatory procedures in the course of criminal investigations. To safeguard the constitutional rights of its citizens, the Florida

**75**

legislature has enacted numerous requirements which must be satisfied in order for an electronic surveillance to be valid.

This Court does not believe that the constitutionality of Chapter 934 can any longer be seriously questioned. Patterned after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Chapter 934 has been found constitutional by every court that has considered this question. See *United States v. Skarloff*, 506 F.2d 847 (5th Cir. 1975), Cert den 423 U.S. 874 (1975).

Because of *United States v. Turner*, 528 F.2d 143 (9th Cir. 1975), the Court also rejects the Defendants contention that Section 934 suffers from the same defect found by the Court in *Berger v. New York*. In that case the Court noted that the duration of an electronic surveillance should be properly limited. Section 934 complies with this requirement by requiring a new showing of probable cause if an electronic surveillance is to be continued beyond a 30-day period.

## PRIOR SURVEILLANCE DISCLOSURE

The next and perhaps most difficult issue presented is the extent to which prior surveillance disclosure is required. Section 934.09(1)(e) provides in pertinent part, that;

"A full and complete disclosure of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge, for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application and the action taken by the judge on each application."

There is no question that the Luis Vasquez business and residence affidavits in support of probable cause both mentioned prior applications for wiretaps concerning the same individuals. In fact, these prior affidavits were attached as exhibits to all subsequent applications for wiretaps. The question then remains as to whether Section 934 requires the disclosure of the *results* of each previous investigation. This question has been addressed in *Bagley v. State*, 397 So.2d 436 1038 (Fla. 5th DCA) and *State v. Aurelio*, 366 So.2d 72 (Fla. 5th DCA 1981). Both Courts affirmed the fact that Section 934 requires a "full and complete statement of facts concerning all previous applications." However, nothing specifically requires that an affiant make known the specific results of each and every prior application. Instead, once being informed of the existence of prior applications for electronic surveillance, a judge may in his discretion require additional facts concerning the results of specific applications. See Section 934.09(2). This Court is

not convinced that Section 934's requirement of a "full and complete statement of facts concerning all previous applications" requires a full statement of *all results*.

## PEN REGISTER

Defendants next contention is that evidence obtained as a result of pen registers is invalid in that it was not supported by probable cause. Unfortunately, the United States Supreme Court in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577 (1976), ruled that a "pen register did not constitute a search within the meaning of the 4th Amendment". This Court further recognizes that the States are free to enact legislation which is more protective in nature, concerning the rights of their citizens. See *State v. Sarmiento*, 397 So.2d 643 (Fla. 1981). However, no Florida Court has as yet recognized a pen register as being of such an intrusive nature to constitute a search under the 4th Amendment. The Court does not find persuasive in this area Florida's right to privacy guarantee in its Constitution.

## EXHAUSTION OF OTHER TECHNIQUES

The next issue raised is concerning whether police exhausted other investigatory techniques prior to application for wiretap orders. This Court recognized that it is improper for police to resort to intrusive wiretapping prior to exhausting traditional techniques. *Daniels v. State*, 381 So.2d 707 (1979). The key to this issue lies in the reasoning of *Cuba v. State*, 362 So.2d 29 (Fla. 3rd DCA 1978), in which the Court held that prior to a wiretap, it is not necessary for police to attempt every other imaginable method of investigation, the police need only inform the issuing magistrate of the difficulties involved in the use of conventional techniques. In this case the Court is convinced, as was stated by police in their applications, that other investigatory procedures would be futile. These men deal in a close, tight knit group, and chances of using officers is either unrealistic or simply too dangerous. A search warrant would blow the cover of the investigation without achieving the desired goals. Further physical surveillance had been attempted, yet had failed to provide police with the necessary information concerning the intricate workings of these drug organizations.

This Court is convinced that the application in this case detailing the difficulty with employing standard investigatory techniques is sufficient to satisfy the requirements outlined in *Cuba*, supra and *Hudson v. State*, 368 So.2d 899 (Fla. 3rd DCA 1979).

## STATEMENT OF AUTHORIZED OBJECTIVES

On the issue of authorized objectives, this Court recognizes that any

objective concerning uncovering a drug conspiracy cannot by its nature be stated with mathematical clarity. However, after reviewing the applications and affidavits this Court finds the stated objectives to be sufficiently definite so as to meet the requirements of Chapter 934. Also, the Court finds unconvincing the Defendants contention that once officers have established probable cause to arrest some individuals, that because these objectives have been attained the entire operation must be suspended. In *State v. Carney*, 407 So.2d 340 (Fla. 4th DCA 1981), the Court noted that one co-conspirator cannot preclude the use of evidence acquired through a wiretap merely by pointing to the abundance of probable cause already in existence to arrest others.

## MINIMIZATION

During the course of this investigation police listened to numerous telephone conversations; many of which were unrelated to the drug conspiracy. Chapter 934 requires police to minimize their intrusion by only listening to conversations which can further their authorized objectives. However, it is only reasonable that police must listen to a portion of all conversations in order to ascertain whether or not they relate to criminal activity. This Court finds that police met the standards of the reasonableness test outlined by the Supreme Court in *Scott v. U.S.*, 346 U.S. 128 (1978).

## SEALING AND STORAGE

The defense contends that police failed to properly deliver, seal, and store the intercepted tapes in compliance with Chapter 934. Assuming without deciding that this contention is correct, this Court does not believe that such non-compliance plays such a central role in the interception so to require suppression. See *U.S. v. Chavez*, 416 U.S. 562 (1974). Likewise, the contention that the State failed to make the contents of these interceptions available to the Defendant within 90 days is not so prejudicial so as to require suppression.

## STATUTE NOT OVERBROAD

No merit is found by the Court in the Defendants contention that the order permitting covert entry to install a "roombug" is overbroad. The United States Supreme Court in *Dalia v. U.S.*, 441 U.S. 238 (1979), upheld the validity of this type of investigatory technique when authorized by the legislature. Chapter 934 specifically allows surreptitious entry such as was conducted in this case. The very nature of such investigatory techniques make it extremely difficult to particularize exactly who is to be intercepted, and the legislature recognized this

78

when it enacted this statute. This Court finds the statute to be neither vague nor overbroad.

There was no deviation substantially in violation of Chapter 934 in an area which was central to the investigation or so prejudicial so as to require suppression. In conclusion, the Court based upon the foregoing upholds the validity of the warrants underlying these intercepted communications.

THE MOTIONS ARE DENIED.